**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JORDAN ZEICHNER, TIM PETERSON, MICHAEL SASGEN, LANZY KANDEH, RENE TIO, JOHN DADDABBO, DENNIS HANSCOM, and CRAIG SCHNAPPINGER,

On Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

NORDVPN S.A., TEFINCOM SA D/B/A NORDVPN, AND NORDSEC B.V.,

Defendants.

Case No.: 1:25-CV-2571-ER

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT AND RELATED RELIEF**

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com

**BRYSON HARRIS SUCIU & DEMAY PLLC**
Scott C. Harris*
900 W. MORGAN STREET
RALEIGH, NORTH CAROLINA 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@brysonpllc.com

**Admitted pro hac vice*

Dated: October 7, 2026

*Co-Counsel for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

I. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. Factual Allegations and Plaintiffs' Pre-Suit Investigation ..... 2

B. Overview of the Litigations ..... 3

C. Settlement Negotiations ..... 4

II. SUMMARY OF THE SETTLEMENT TERMS ..... 5

A. Eligible Class Members ..... 5

B. The Settlement Amount and Allocation Plan ..... 6

C. Distribution of the Settlement Fund ..... 6

D. Named Plaintiff Service Awards ..... 7

E. Business Practice Changes ..... 8

F. Mutual Releases ..... 9

G. The Settlement Administrator ..... 9

III. RULE 23 CLASS ACTION SETTLEMENT PROCEDURE AND NOTICE PLAN ..... 9

IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..... 11

A. Adequacy of Representation: Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class ..... 13

B. Presence of Arm's-Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times ..... 15

C. Adequate Relief for the Class: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Litigation Risks ..... 16

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ..... 16

2. Plaintiffs Face Real Risks if the Case Proceeds (*Grinnell* Factors 4 to 6) ..... 17

D. Effectiveness of the Proposed Method of Distributing Relief: A Simple Claims Process and a Fair Allocation ..... 20

E. The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Request Is Well Within Second Circuit Norms .......... 21

1. Attorneys' Fees of One-Third Percentage Are Common in the Second Circuit....22

2. *Kurtz* Does Not Alter Courts' Assessment of Fees in Common Fund Cases ........23

3. The Fee Request Authorized by the Settlement Agreement Is Consistent with Public Policy ..........26

F. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Alleged Damages and Is Reasonable .......... 28

G. The Remaining *Grinnell* Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate .......... 28

1. The Reaction of the Class (*Grinnell* Factor 2) ..........28

2. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ..........28

3. Although Defendants Likely Could Withstand a Greater Judgment, That Does Not Suggest the Settlement Is Unfair (*Grinnell* Factor 7) ..........29

4. The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) .........30

V. THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED .......... 31

A. Numerosity .......... 32

B. Commonality .......... 32

C. Typicality .......... 33

D. Adequacy .......... 34

E. Certification Is Proper Under Rule 23(b) .......... 34

1. Common Questions Predominate ..........34

2. A Class Action Is a Superior Mechanism for Adjudicating Claims ..........35

VI. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL .......... 37

VII. THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED .......... 38

CONCLUSION ........................................................................................................ 40

# TABLE OF AUTHORITIES

**Cases**


*Alvarez v. Schnipper Restaurants LLC*,
No. 16-CV-5779, 2019 WL 5682633 (S.D.N.Y. Nov. 1, 2019) ........ 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 35, 36

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) ........ 27

*Bell v. Pension Comm. of ATH Holding Co.*,
No. 15-CV-2062, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ........ 25

*Belton v. GE Cap. Consumer Lending, Inc.*,
No. 21-CV-9492, 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ........ 19

*Branson v. All. Coal, LLC*,
No. 19-CV-155, 2025 WL 3068616 (W.D. Ky. Nov. 3, 2025) ........ 23

*Brazier v. Real Hospitality Group, LLC*,
No. 20-CV-08239, 2021 WL 7210088 (S.D.N.Y. Nov. 12, 2021) ........ 12

*Bryant v. Potbelly Sandwich Works*,
No. 17-CV-7638, 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ........ 26

*Budicak Inc. v. Lansing Trade Grp., LLC*,
No. 19-CV-2449, 2023 WL 7189144 (D. Kan. June 16, 2023) ........ 23

*Caccavale v. Hewlett-Packard Co.*,
No. 20-CV-974, 2025 WL 2960237 (E.D.N.Y. Oct. 20, 2025) ........ 24

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ........ 36

*Caste v. Trustees of Columbia Univ. in City of New York*,
No. 16-CV-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ........ 22

*Charles v. Pinnacle Too, LLC*,
No. 22-CV-4232, 2024 WL 4491560 (S.D.N.Y. Oct. 15, 2024) ........ 33

*Chen-Oster v. Goldman Sachs & Co.*,
No. 10-CV-6950, 2023 WL 7325264 (S.D.N.Y. Nov. 7, 2023) ........ 24

*Christine Asia Co., Ltd. v. Yun Ma*,
No. 15-MD-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........ 39

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................... 12, 13, 16

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)................................................................................... 32

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)................................................................................... 13

*Cruz Guerrero v. Montefiore Health Sys. Inc.*,
No. 22-CV-2862, 2025 WL 100889 (S.D.N.Y. Jan. 15, 2025) ........................................ *passim*

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)................................................................................... 17

*de Lacour v. Colgate-Palmolive Co.*,
338 F.R.D. 324 (S.D.N.Y. 2021) ......................................................................... 36

*DeLeon v. Wells Fargo Bank, N.A.*,
No. 12-CV-4494, 2015 WL 2255394 (S.D.N.Y. May 11, 2015) ............................................ 24

*Delijanin v. Wolfgang's Steakhouse Inc.*,
No. 18-CV-7854, 2021 WL 535635 (S.D.N.Y. Feb. 12, 2021)............................................... 19

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)................................................................................. 11

*Diaz v. N.Y. Paving, Inc.*,
No. 18-CV-4910, 2026 WL 1746076 (S.D.N.Y. June 17, 2026) ............................................ 22

*Emeterio v. A&P Rest. Corp.*,
No. 20-CV-970, 2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ..................................... 11, 24, 36

*Est. of Loguidice v. Gerber Life Ins. Co.*,
No. 20-CV-03254, 2025 WL 3764748 (S.D.N.Y. Dec. 30, 2025) .......................................... 35

*Everetts v. Pers. Touch Holding Corp.*,
No. 21-CV-2061, 2025 WL 942800 (E.D.N.Y. Mar. 28, 2025).............................................. 26

*Famular v. Whirlpool Corp.*,
No. 16-CV-944, 2019 WL 1254882 (S.D.N.Y. Mar. 18, 2019).............................................. 35

*Ferrick v. Spotify USA Inc.*,
No. 16-CV-8412, 2018 WL 2324076 (S.D.N.Y. May 22, 2018) ............................................... 8

*Fleisher v. Phoenix Life Ins. Co.*,
No. 14-CV-8714, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)........................................ 9, 25

*Flores v. CGI Inc.*,
No. 22-CV-350, 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ........................................... 36

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) ........................................................................................... 6

*Genesee Cnty. Employees' Ret. Sys. v. DocGo Inc.*,
No. 23-CV-9476, 2026 WL 810233 (S.D.N.Y. Mar. 24, 2026) ........................................... 22

*Goidel v. Aetna Life Ins. Co.*,
No. 21-CV-7619, 2024 WL 4441806, (S.D.N.Y. Oct. 8, 2024) ............................ 8, 13, 16, 29

*Gong v. Neptune Wellness Sols. Inc.*,
No. 21-CV-1386, 2023 WL 6594352 (E.D.N.Y. July 18, 2023) ........................................... 21

*Gonzalez v. Hanover Ventures Marketplace LLC*,
No. 21-CV-1347, 2024 WL 1157074 (S.D.N.Y. Mar. 18, 2024) .................................... 33, 35

*Gonzalez v. Northwell Health, Inc.*,
--- F.R.D. ----, 2026 WL 2633213 (E.D.N.Y. 2026) ........................................................... 18

*Grissom v. Sterling Infosys., Inc.*,
No. 20-CV-7948, 2024 WL 4627567 (S.D.N.Y. Oct. 30, 2024) ........................................... 15

*Guevoura Fund Ltd. v. Sillerman*,
No. 15-CV-7192, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................................... 18, 31

*Hart v. BHH, LLC*,
No. 15-CV-4804, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020) ............................................. 7

*Hasemann v. Gerber Prods. Co.*,
No. 15-CV-2995, 2025 WL 2773748 (E.D.N.Y. Sept. 29, 2025) .......................................... 26

*Hezi v. Celsius Holdings, Inc.*,
No. 21-CV-9892, 2023 WL 2786820 (S.D.N.Y. Apr. 5, 2023) ............................................ 24

*Hines v. Equifax Info. Servs. LLC*,
No. 19-CV-6701, 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) .......................................... 35

*In re Actos Antitrust Litig.*,
No. 13-CV-9244, 2024 WL 4251891 (S.D.N.Y. Aug. 9, 2024) ............................................ 32

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 02-CV-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................... 18

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................................... 17

*In re Banc of Cal. Sec. Litig.*,
No. 17-CV-118, 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ........ 23

*In re BioScrip, Inc. Sec. Litig.*,
273 F. Supp. 3d 474 (S.D.N.Y. 2017) ........ 27

*In re Canon U.S.A. Data Breach Litig.*,
No. 20-CV-6239, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023) ........ 15

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
333 F.R.D. 364 (E.D. Pa. 2019) ........ 26

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01-MD-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ........ 31

*In re DiDi Glob. Inc. Sec. Litig.*,
No. 21-CV-5807, 2025 WL 1909295 (S.D.N.Y. July 7, 2025) ........ 34

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........ 26, 27

*In re Graña y Montero S.A.A. Sec. Litig.*,
No. 17-CV-01105, 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ........ 21, 30

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. Nov. 7, 2019) ........ 13, 14, 19, 28

*In re GSE Bonds Antitrust Litig.*,
No. 19-CV-1704, 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ........ 30

*In re Kind LLC "Healthy and All Natural" Litig.*,
337 F.R.D. 581 (S.D.N.Y. 2021) ........ 36

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96-CV-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........ 24

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) ........ 19

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ........ 19, 30

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ........ 30

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 05-MD-1720, 2019 WL 6888488 (E.D.N.Y. Dec. 16, 2019) ........ 27

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16-CV-06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......... 30

*In re Tenaris S.A. Sec. Litig.*,
No. 18-CV-7059, 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) .......... 18

*In re Tether and Bitfinex Crypto Asset Litig.*,
No. 19-CV-9236, 2026 WL 629826 (S.D.N.Y. Mar. 6, 2026) .......... 14

*In re Visa Check/Master Money Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) .......... 34, 35

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.*,
No. 23-CV-431, 2024 WL 5082773 (S.D.N.Y. Oct. 29, 2024) .......... 22

*Jackson v. Ampac Paper, LLC*,
No. 22-CV-3120, 2025 WL 2346065 (S.D.N.Y. Aug. 13, 2025) .......... 13, 17, 28, 39

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) .......... 13

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) .......... 6

*Kohari v. MetLife Grp., Inc.*,
No. 21-CV-6146, 2025 WL 100898 (S.D.N.Y. Jan. 15, 2025) .......... 13, 14, 27

*Krasnansky v. JCCA*,
No. 22-CV-6577, 2023 WL 6141240 (S.D.N.Y. Sept. 20, 2023) .......... 22

*Kurtz v. Kimberly-Clark Corp.*,
142 F.4th 112 (2d Cir. 2025) .......... 23

*Lawrence v. NYC Med. Practice, P.C.*,
No. 18-CV-8649, 2024 WL 307842 (S.D.N.Y. Jan. 26, 2024) .......... 19

*Lea v. Tal Educ. Grp.*,
No. 18-CV-5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .......... 17, 21, 26

*Leone v. ASP Isotopes Inc.*,
811 F. Supp. 3d 563 (S.D.N.Y. 2025) .......... 34, 35

*Lozada v. TaskUs, Inc.*,
No. 22-CV-01479, 2025 WL 3125848 (S.D.N.Y. Nov. 6, 2025) .......... 22, 24

*Mangahas v. Eight Oranges Inc.*,
No. 22-CV-4150, 2025 WL 30336585 (S.D.N.Y. Oct. 30, 2025) .......... 7

*Marin v. 310 Bowery Grp. LLC*,
No. 24-CV-1340, 2025 WL 893731 (S.D.N.Y. Mar. 24, 2025) .............................................. 19

*Martinenko v. 212 Steakhouse, Inc.*,
No. 22-CV-518, 2023 WL 2919766 (S.D.N.Y. Apr. 12, 2023) ............................................. 37

*Martinenko v. 212 Steakhouse, Inc.*,
No. 22-CV-518, 2024 WL 3928849 (S.D.N.Y. Aug. 13, 2024)........................................ 36, 39

*McCoy v. Health Net, Inc.*,
569 F. Supp. 2d 448 (D.N.J. 2008) ........................................................................................ 25

*McIntosh v. Katapult Holdings, Inc.*,
No. 21-CV-07251, 2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) .............................. 29, 30, 33

*Medina v. NYC Harlem Foods Inc*,
No. 21-CV-1321, 2024 WL 2751127 (S.D.N.Y. May 29, 2024) ............................................ 39

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) ............................................................................................. *passim*

*Nichols v. Noom, Inc.*,
20-CV-3677, 2022 WL 2705354 (S.D.N.Y. July 12, 2022).................................... 8, 14, 33, 34

*Pearlstein v. Blackberry Ltd.*,
No. 13-CV-7060, 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ............................................. 36

*Pearlstein v. Blackberry Ltd.*,
No. 13-CV-7060, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)............................................ 21

*Piney v. City of New York*,
No. 25-CV-671, 2025 WL 2451011 (S.D.N.Y. Aug. 26, 2025).............................................. 12

*Piney v. City of New York*,
No. 25-CV-671, 2025 WL 3089894 (S.D.N.Y. Nov. 5, 2025)................................................ 29

*Piney v. City of New York*,
No. 25-CV-671, 2026 WL 2495247 (S.D.N.Y. Aug. 25, 2026).............................................. 21

*Polvay v. FCTI, Inc.*,
713 F. Supp. 3d 1 (S.D.N.Y. 2024) ................................................................................. 33, 35

*Puddu v. 6D Global Techs., Inc.*,
No. 15-CV-8061, 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ...................................... 18, 30

*Quow v. Accurate Mech. Inc.*,
No. 15-CV-09852, 2018 WL 3368673 (S.D.N.Y. July 10, 2018)..................................... 18, 19

*Renois v. WVMF Funding, LLC*,
No. 20-CV-9281, 2026 WL 2240388 (S.D.N.Y. July 30, 2026) ........................................... 32

*Reyes v. Summit Health Management, LLC*,
No. 22-CV-9916, 2024 WL 472841 (S.D.N.Y. Feb. 6, 2024)......................................... 15, 29

*Robertson v. Trinity Packaging Corp.*,
No. 19-CV-659, 2025 WL 2224586 (W.D.N.Y. Aug. 5, 2025) ............................................ 25

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)................................................................................................ 33

*Rodriguez v. CPI Aerostructures, Inc.*,
No. 20-CV-982, 2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) ............................................ 30

*Rodriguez v. Festival Fun Parks LLC*,
No. 24-CV-1245, 2026 WL 1656443 (E.D.N.Y. Mar. 18, 2026)........................................... 11

*Sierra v. City of New York*,
No. 20-CV-10291, 2023 WL 7016348 (S.D.N.Y. Oct. 25, 2023)............................................ 8

*Soler v. Fresh Direct, LLC*,
No. 20-CV-3431, 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ........................................... 29

*Solis v. OrthoNet* LLC,
No. 19-CV-4678, 2021 WL 2678651 (S.D.N.Y. June 30, 2021) .......................................... 26

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
No. 15-CV-3538, 2023 WL 3749996 (S.D.N.Y. June 1, 2023) ............................................ 17

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011).................................................................................................. 6

*Swanson v. Manhattan Beer Distribs., LLC*,
No. 15-CV-5383, 2026 WL 850837 (E.D.N.Y. Mar. 27, 2026)............................................ 29

*Sykes v. Harris*,
No. 09-CV-8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016) .......................................... 25

*Tennille v. W. Union Co.*,
No. 09-CV-938, 2013 WL 6920449 (D. Colo. Dec. 31, 2013) ............................................. 25

*Volino v. Progressive Cas. Ins. Co.*,
No. 21-CV-6243, 2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023)........................................... 35

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)............................................................................................................ 32

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ............ 31

*Zimmerman v. Paramount Global*,
No. 23-CV-2409, 2025 WL 763734 (S.D.N.Y. Mar. 11, 2025) ............ *passim*

**Other Authorities**

Federal Judicial Center,
*Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. Ed. (2010) ............ 25

**Rules**

Fed. R. Civ. P. 23 ............ *passim*

Fed. R. Civ. P. 23(a) ............ *passim*

Fed. R. Civ. P. 23(b) ............ *passim*

Fed. R. Civ. P. 23(e) ............ *passim*

Fed. R. Civ. P. 23(g) ............ 35, 37

Fed. R. Civ. P. 23(h) ............ 24

**Treatises**

Herbert B. Newberg & Alba Conte,
*Newberg on Class Actions* (4th ed. 2002) ............ 10, 31

Principles of the Law of Aggregate Litigation,
The American Law Institute, Mar 1, 2010 ............ 25

Wright & Miller,
7A Fed. Prac. & Proc. Civ. (3d ed.) ............ 14

Plaintiffs Jordan Zeichner, Tim Peterson, Michael Sasgen, Lanzy Kandeh, Rene Tio, John Daddabbo, Dennis Hanscom, and Craig Schnappinger ("Plaintiffs") respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement Agreement and Related Relief. Defendants NordVPN S.A., Tefincom SA d/b/a NordVPN, and Nordsec B.V. ("Nord" or "Defendants") do not oppose this Motion.[1]

**INTRODUCTION**

Plaintiffs brought this consumer protection action to reform Nord's automatic renewal billing practices and to recover the renewal charges customers paid as a result of those practices. Plaintiffs now bring this unopposed motion for preliminary approval of a settlement that accomplishes both goals: following three years of investigation and litigation, Nord has already revised the practices at issue, and the parties have reached a settlement that establishes an $18,000,000 cash fund for the Class.

This outcome was no easy feat. More than two years of that time involved hard-fought litigation in nine different courts, seven motions to dismiss, several amended class action complaints, and the production and analysis of extensive data and documents. Achieving resolution also required two full-day mediation sessions, held nearly a year apart, and overseen by an experienced and forceful class action mediator. Settlement negotiations were further informed by two retained experts: a data scientist, who analyzed over 67 million data points of customer data produced in the run-up to mediation, and a user experience expert, who reviewed Nord's enrollment, disclosure, and cancellation practices.

[1] Defendants deny all allegations of wrongdoing and liability. Defendants do not oppose this Motion but do not adopt Plaintiffs' characterizations of the facts, claims, damages, or the value of any relief, and nothing in this Motion is an admission by Defendants. *See* Class Action Settlement Agreement ("Settlement Agreement" or "SA"), attached as Exhibit 1 to the accompanying Joint Declaration of Ethan D. Roman and Scott C. Harris ("Counsel Decl."), §§ I, IV, XII.

This nearly three-year effort produced an excellent outcome for the proposed class of approximately 1,139,000 unique Nord customers ("Class Members"). The settlement's cash portion represents 13.9% of all recurring charges Plaintiffs identified in Nord's data, and the litigation resulted in business practice changes valued at an additional $18,000,000. The average settlement payment is estimated to be $49.21.

The settlement thus easily satisfies the criteria for preliminary approval under federal law. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement as described in the Settlement Agreement; (2) preliminarily certify the proposed Class for settlement purposes; (3) approve the parties' notice plan ("Notice") and direct its execution; (4) appoint Wittels McInturff Palikovic and Bryson Harris Suciu & DeMay PLLC, as Class Counsel ("Class Counsel"); and (5) schedule the Final Approval Hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations and Plaintiffs' Pre-Suit Investigation

Plaintiffs and Class Members are Nord customers in the United States who enrolled in automatically renewing subscriptions to a Nord Service[2] and paid at least one subscription renewal charge. Plaintiffs alleged that Nord's automatic renewal practices violated, *inter alia*, Cal. Bus. & Prof. Code §§ 17600–06, Colo. Rev. Stat. § 6-1-732, 815 ILCS 601/1 *et seq.*, N.Y. Gen. Bus. Law §§ 527–527a, Mass. Gen. Laws Ch. 93A, § 2, C.G.S.A. §§ 42-110a, *et seq.*, Va. Code Ann. §§ 59.1-196, *et seq.*, N.C.G.S. § 75-41, and the common law. Consolidated Amended Class Action Compl. ¶¶ 233–404, ECF No. 66 ("CAC").

[2] Defined in the Settlement Agreement as "the following services sold by Nord, either separately or as part of a bundle, to United States customers during the Class Period: NordVPN, NordPass, NordLocker, Dedicated IP, ID Theft Insurance and Cyber Extortion Insurance benefits, and the third-party service Incogni, which Nord resells but does not operate." SA ¶ 23.

Before commencing this litigation, and beginning in early fall 2023, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses in this action. Counsel Decl. ¶ 27. Class Counsel obtained and analyzed documents from Plaintiffs and other Nord customers and conducted extensive factual and legal research into potential experts, ultimately engaging both a database discovery and data science expert, and a user experience and user-centered design expert. *Id.* ¶ 28. In addition, Class Counsel researched the pertinent case law and facts in other actions challenging subscription practices and conducted comprehensive legal research concerning the complexities of automatic renewal-based class actions. *Id.* ¶ 29.

### B. Overview of the Litigations

On March 28, 2025, Plaintiff Kandeh filed his Class Action Complaint in this District. ECF No. 1. On August 3, 2026, Plaintiffs filed the CAC, which consolidated similar actions pending (or terminated) in various other courts (the "Related Actions") (together with this action, the "Actions"). Counsel Decl. ¶ 30. Specifically:

- *Zeichner v. Nord Security, et al.*, 24-CV-2462 (N.D. Cal.) (pending);
- *Peterson v. Nordvpn S.A., et al.*, 24-CV-3218 (D. Colo.) (pending);
- *Sasgen v. Nordvpn, S.A., et al.*, 25-CV-6822 (N.D. Ill.) (pending);
- *Tio v. Nordvpn S.A., et al.*, 25-CV-13374 (D. Mass.) (pending);
- *Daddabbo v. Nordvpn, S.A., et al.*, 26-CV-558 (D. Conn.) (pending);
- *Hanscom v. NordSec Ltd., et al.*, 24-CV-277 (W.D.N.C.) (terminated);
- *Hanscom v. NordVPN S.A.*, 24CV057887-590 (N.C. Super. Ct.) (terminated); and
- *Schnappinger v. Nordvpn, S.A., et al.*, 26-CV-982 (E.D. Va.) (pending).

*Id.* The parties litigated motions to dismiss in several of the Actions with varied results. *Id.* ¶ 31. In the federal *Hanscom* action, the court granted a motion to dismiss on November 19, 2024. *Id.* The state *Hanscom* action was also dismissed, on January 13, 2026. *Id.* In the California federal action, the court granted in part and denied in part Defendants' motion on December 2, 2024, leaving several live claims. *Id.* Motions to dismiss were also filed in *Tio* and in this Court. *Id.* ¶

32. The *Tio* motion was denied administratively after the Parties notified the court about settlement negotiations and this Court stayed this action before resolving the motion. *Id.*

Discovery first commenced in the federal California action in December 2024. Counsel Decl. ¶ 33. The parties contested discovery vigorously but were able to eventually reach agreement on most of their disputes, presenting one ESI Protocol dispute to the California court for resolution. *Id.* Defendants made over a dozen document productions, in 18 volumes, consisting of thousands of pages. *Id.* These productions included detailed nationwide charging data, with nearly 3.2 million rows of data and over 67 million Class Member data points. *Id.* The California Plaintiff made four document productions and produced an updated metadata overlay for one of those productions. *Id.* Discovery began in *Peterson* in February 2025. *Id.* In *Peterson*, Defendants made four document productions, and the *Peterson* Plaintiff made three. *Id.* Here, Plaintiff Kandeh made one production. *Id.*

**C. <u>Settlement Negotiations</u>**

Aware of their duty to explore resolution while also moving the litigation forward, the parties set this case on a simultaneous mediation track in March 2025. Counsel Decl. ¶ 34. The parties engaged experienced class action mediator Marc E. Isserles, Esq. and held a full-day, in-person mediation in Manhattan on July 15, 2025. *Id.* ¶ 35. In advance of mediation, Plaintiffs' user experience and user-centered design expert reviewed, analyzed, and prepared a preliminary analysis of Defendants' auto-renewal practices. *Id.* ¶ 36. Plaintiffs also hired a database and data science expert to assist in the analysis of the nationwide Class Member charging data to inform their negotiations during mediation. *Id.* ¶ 37. Class Counsel and the data scientist then used this data to construct a comprehensive damages model. *Id.* This model anchored negotiations at the

July 15, 2025 mediation, as well as the subsequent September 2, 2025 mediation (held over Zoom) and full-day, in-person mediation held on April 14, 2026. *Id.*

As a result of the parties' and the Mediator's efforts, on April 14, 2026, the parties reached a settlement in principle. *Id.* ¶ 38. The parties then spent the period from mid-April 2026 to October 2026 negotiating final terms. *Id.* As with all prior negotiations, these discussions were adversarial, at arm's length, and included comprehensive written correspondence and discussions among counsel on April 22 and 29, May 20 and 22, June 24, 25, 26, and 29, July 1, 6–10, 13, and 14, September 17 and 28, and October 2 and 6, 2026. *Id.*

## II. SUMMARY OF THE SETTLEMENT TERMS

### A. Eligible Class Members

The Class is defined as all persons in the United States who at any time between April 26, 2020, and January 1, 2025 enrolled in an automatically renewing subscription to a Nord Service through the Nord Websites and paid at least one subscription renewal charge that was not later fully refunded. SA ¶ 10.[3] Applying these criteria to the data Nord has produced, the Class includes approximately 1,139,000 unique customers. *Id.* For purposes of notice and administration, each unique email address will be considered a distinct Class Member. *Id.*

[3] For purposes of the class definition, renewing subscription charges appear in Nord's data as "subscription" charges, and initial enrollment charges are categorized as "authorization" charges. SA ¶ 10. Customers charged only "authorization" charges but not renewing "subscription" charges are not in the Class. *Id.* Persons who purchased a Nord Service via the Apple or Google Play stores are also excluded from the Class. *Id.* Also excluded from the Class are Nord; any parent, subsidiary, or affiliate of Nord; any entity in which Nord has or has had a controlling interest, or which Nord otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Nord. *Id.* Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff. *Id.*

### B. The Settlement Amount and Allocation Plan

Under the Settlement Agreement, Nord has already deposited $18,000,000 into an escrow account ("Settlement Fund"). Counsel Decl. ¶ 40. After making routine deductions for the administration expenses, litigation expenses, the reserve fund, service awards, and attorneys' fees, cash payments will be distributed to Class Members on a pro rata basis in proportion to the non-refunded subscription payments they made. *Id.* ¶ 43. In other words, the more payments a Class Member made, the larger their settlement payment will be. *Id.* Assuming a 20% claims rate,[4] the average estimated payment is approximately $49.21.[5] Counsel Decl. ¶ 44. The settlement also provides for a minimum payment of $25.00 to Class Members whose allocation would otherwise be less than $25.00. *Id.* ¶ 45.

### C. Distribution of the Settlement Fund

Class Members will be eligible to receive their share of the settlement after completing a simple, easy-to-use claim form. *Id.* ¶ 47; *see also* Ex. 7. Class Members will be able to select from several payment methods, including a physical check, ACH transfer, prepaid Mastercard, PayPal, Zelle, or Venmo. *Id.* ¶ 48. Class Members who have not opted out, filed a claim, objected, or affirmatively unsubscribed from Settlement Administrator emails will receive a reminder notice

---

[4] A 20% claims rate would far exceed the response courts routinely observe in consumer class actions. *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("A claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) ("8 percent response rate was well within the acceptable range for a consumer class action."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"). If fewer than 20% of Class Members submit valid claims, the average payment will increase. If more submit, it will decrease.

[5] This figure factors in Plaintiffs' forthcoming request for reimbursement of litigation expenses, estimated at $110,000.00. Counsel Decl. ¶ 44 n.4. At final approval, Plaintiffs will request reimbursement of their exact expenses and will update the average estimated payment as needed. *Id.*

45 days before the claims deadline. *Id.* ¶ 49. Class Members who elect to receive checks will also receive a reminder notice if they have not cashed their check 45 days after receiving it. *Id.* ¶ 50.

### D. Named Plaintiff Service Awards

In recognition of the key services rendered by the Named Plaintiffs on behalf of the approximately 1,139,000 Class Members, Plaintiffs will apply for service awards totaling no more than $40,000, reflective of Plaintiffs' invaluable contributions to this action throughout the litigation. *Id.* ¶ 51. "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150, 2025 WL 30336585, at *15 (S.D.N.Y. Oct. 30, 2025) (citation modified).

Before joining this action, each named Plaintiff agreed to shoulder the responsibilities of being a sole representative plaintiff in their respective states, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement. Counsel Decl. ¶ 52. Throughout the litigation, Plaintiffs made themselves available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims, and whatever else was needed to pursue a recovery for Class Members. *Id.* ¶ 53. At all times, Plaintiffs encouraged Class Counsel to obtain the best possible result for Class Members. *Id.* ¶ 54. In short, Plaintiffs' participation in this case was significant and critical. *Id.*

The requested service award is well-deserved and well within the range of awards approved in similar cases. *See, e.g.*, *Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) (case law supports service awards of between $2,500 and $85,000); *see also Goidel v. Aetna Life Ins. Co.*, No. 21-CV-7619, 2024 WL 4441806, at *6 (S.D.N.Y. Oct. 8,

2024) (approving $15,000 service awards to each of four named plaintiffs); *Sierra v. City of New York*, No. 20-CV-10291 (CM) (GWG), 2023 WL 7016348, at *5 (S.D.N.Y. Oct. 25, 2023) (approving $21,500 service awards as "solidly in the middle of the range of incentive awards given generally to named plaintiffs across a variety of class actions") (citation modified). Moreover, the award application was subject to arms-length negotiations, was facilitated by an experienced mediator, and will be disclosed to the Class. Counsel Decl. ¶ 55. In sum, both the facts and law support the requested service awards. The Court need not rule on the award now, however, as per the Settlement Agreement Plaintiffs will move for final court approval of the service award with the Motion for Final Approval of the Settlement.

### E. Business Practice Changes

The parties agree that, as a result of the Actions, Nord revised its practices regarding auto-renewal and subscription cancellation to the benefit of Class Members and the general public. SA ¶ 49. Specifically, beginning in mid-2024 and completed by January 1, 2025, Nord updated its various auto-renewal related disclosures and practices. Counsel Decl. ¶ 59.[6] The parties valued these business practice changes at not less than $18,000,000. SA ¶ 49. This valuation is based on the four-year class period and settlement amount from the Settlement Agreement. Counsel Decl. ¶ 59.

This is a substantial benefit that courts consider in the fairness analysis. *See Nichols v. Noom, Inc.*, 20-CV-3677, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) ("The non-monetary benefits to the class and future customers of [defendant] are also valuable . . . . These aspects of the settlement also weigh in favor of approval."); *see also Ferrick v. Spotify USA Inc.*, No. 16-CV-8412, 2018 WL 2324076, at *6 (S.D.N.Y. May 22, 2018) ("The combination of the immediate and

[6] The parties agreed that the class period should end January 1, 2025. Counsel Decl. ¶ 60. Class Counsel's damages calculation used in settlement negotiations reflected this assessment. *Id.*

future monetary relief, along with the non-monetary benefits provided, constitutes a significant recovery."); *Fleisher v. Phoenix Life Ins. Co.*, No. 14-CV-8714, 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief.").

### F. Mutual Releases

Class Members and Defendants will fully release and discharge one another from all claims arising out of or relating to the Action or Related Actions that accrued between April 26, 2020 and January 1, 2025, and that were, or could have been, asserted in the action. SA ¶¶ 10, 36–37, 72–81.

### G. The Settlement Administrator

Following a competitive bidding process, the parties jointly selected Fidexis, LLC as the Settlement Administrator to disseminate notice and distribute settlement payments. Counsel Decl. ¶ 61. As part of this bidding process the parties requested capped bids such that the risk of additional administration costs will be borne by the Settlement Administrator and not Class Members. *Id.* Fidexis agreed to cap costs at $390,637.00. *Id.* Based on Class Counsel's experience, $390,637 is a reasonable administration cost for a case of this size and complexity. *Id.*

## III. RULE 23 CLASS ACTION SETTLEMENT PROCEDURE AND NOTICE PLAN

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2. Dissemination of notice of settlement to class members; and

3. A final settlement approval hearing for the court to consider the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.22, *et seq.* (4th ed. 2002) ("*Newberg*"). With this motion, Plaintiffs ask that the Court take the first step: grant preliminary approval, conditionally certify the class, and approve the notice plan.

Plaintiffs submit for the Court's consideration and approval the following proposed schedule and notice plan overview for the final resolution of this matter:

1. Within 60 days of preliminary approval, the Settlement Administrator will disseminate notice by email to Class Members. SA ¶ 84.a. The email notice is attached as Exhibit D to the Settlement Agreement (and Counsel Decl. Ex. 3). The Settlement Administrator will monitor the email notice program and optimize the delivery of email notice to maximize distribution, including using best practices to ensure notice delivery and taking steps to avoid spam filters. SA ¶ 84.d. Where Nord lacks a Class Member email address or where the Settlement Administrator determines the email notice was not delivered, direct mail notice will be given. *Id.*

2. Before notice is issued, the Settlement Administrator will launch a settlement-specific website that will allow Class Members to easily: (1) find and view information about the settlement; (2) file (or download) a claim form; (3) view answers to frequently asked questions; (4) view important deadlines; and (5) find contact information for the Settlement Administrator and Class Counsel. *Id.* ¶ 85.b. The settlement website will be available in English, Spanish, and Chinese versions. *Id.* ¶ 85.

3. The Settlement Administrator will cause the settlement to be listed and promoted through two leading class action settlement websites, www.topclassactions.com and www.classaction.org. *Id.* ¶ 86.

4. The Settlement Administrator will establish a 24/7 call center to respond to Class Member inquiries. *Id.* ¶ 87. The Settlement Administrator will provide interpretive services for Spanish and Chinese language speakers. *Id.*

5. Class Members will have 90 days to submit a claim form. *Id.* ¶ 8.

6. Class Members will have 60 days to exclude themselves or object. *Id.* ¶ 32.

7. At least fourteen days before the Claims Deadline, Plaintiffs will move for final settlement approval. *Id.* ¶ 96.

8. The final approval hearing will be held as soon as is convenient for the Court but not less than 150 days after preliminary approval, to allow for the notice program's completion. SA Ex. E ¶ 13.

9. After the final approval hearing, if final approval is granted, the Court will issue a final order and judgment and dismiss this case with prejudice. *Id.* ¶ 15. The parties will work in good faith to obtain dismissal of the Related Actions with prejudice within 30 days of the Effective Date. SA ¶ 35.

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The law strongly favors the settlement of class actions. *See Emeterio v. A&P Rest. Corp.*, No. 20-CV-970, 2022 WL 274007, at *2 (S.D.N.Y. Jan. 26, 2022) ("In the Second Circuit, there is a strong judicial policy in favor of settlements, particularly in the class action context."); *Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-2862, 2025 WL 100889, at *3 (S.D.N.Y. Jan. 15, 2025) (same).

"It is within a district court's discretion to approve proposed class action settlements." *Zimmerman v. Paramount Global*, No. 23-CV-2409, 2025 WL 763734, at *3 (S.D.N.Y. Mar. 11, 2025); *see also Cruz Guerrero*, 2025 WL 100889, at *3 ("The determination of whether the class should be certified and the terms of the proposed settlement are 'fair, reasonable, and adequate' rests in the discretion of the district court." (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 273 (2d Cir. 2006))). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties," and "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Rodriguez v. Festival Fun Parks LLC*, No. 24-CV-1245, 2026 WL 1656443, at *2 (E.D.N.Y. Mar. 18, 2026) (citation modified); *see also Cruz Guerrero*, 2025 WL 100889, at *7 ("Absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." (citation modified)).

"Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement based on the written submission of the settlement parties." *Brazier v. Real Hospitality Group, LLC*, No. 20-CV-8239, 2021 WL 7210088, at *3 (S.D.N.Y. Nov. 12, 2021) (citing *Newberg* § 11.25). "Courts often grant preliminary settlement approval without requiring a hearing or a court appearance." *Zimmerman*, 2025 WL 763734, at *3 (citation modified).

Under the 2018 amendments to Rule 23(e), to grant preliminary approval the Court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Piney v. City of New York*, No. 25-CV-671, 2025 WL 2451011, at *7 (S.D.N.Y. Aug. 26, 2025) (citation modified). "Courts conducting this analysis must make a preliminary evaluation as to whether the settlement is fair, reasonable, and adequate." *Zimmerman*, 2025 WL 763734, at *3 (citation modified). As amended in 2018, Rule 23(e) lists four factors for the Court to consider as part of this inquiry: "(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 242–43 (2d Cir. 2023) (citing Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment); *see also id.* ("Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically[.]").

"In addition to these four factors, courts in this Circuit also consider whether the settlement is fair, reasonable and adequate based on the nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), which partially overlap with the factors in Rule

23(e)(2)(C)-(D)." *Goidel v. Aetna Life Ins. Co.*, No. 21-CV-7619, 2024 WL 4441806, at *3 (S.D.N.Y. Oct. 8, 2024); *see also Moses*, 79 F.4th at 243 ("[T]he revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement."). Accordingly, Plaintiffs offer for the Court's consideration an analysis of "both sets of factors . . . noting where they overlap." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. Nov. 7, 2019).[7]

### A. Adequacy of Representation: Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class

Rule 23(e)(2)(A) requires a court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Jackson v. Ampac Paper, LLC*, No. 22-CV-3120, 2025 WL 2346065, at *6 (S.D.N.Y. Aug. 13, 2025) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

In determining adequacy of the representative plaintiffs, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac.

[7] The *Grinnell* factors are (1) the litigation's complexity, expense and likely duration; (2) the class's reaction; (3) the state of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the defendant's ability to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of the attendant risks of litigation. *Grinnell Corp.*, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 468; *Cruz Guerrero*, 2025 WL 100889, at *6 ("[T]he court should consider the totality of the[] [*Grinnell*] factors in light of the particular circumstances."); *Kohari v. MetLife Grp., Inc.*, No. 21-CV-6146, 2025 WL 100898, at *8 (S.D.N.Y. Jan. 15, 2025) (same). Here, the *Grinnell* factors weigh heavily in favor of full settlement approval, and certainly in favor of preliminary approval.

& Proc. Civ. § 1768 (3d ed.)) (citation modified); *Alvarez v. Schnipper Restaurants LLC*, No. 16-CV-5779, 2019 WL 5682633, at *6 (S.D.N.Y. Nov. 1, 2019) (same). To satisfy this prong, Plaintiffs must only show that "no fundamental conflicts exist between the class representatives and its members." *Cruz Guerrero*, 2025 WL 100889, at *5 (citation modified); *Kohari*, 2025 WL 100898, at *6.

Plaintiffs here are adequate because their "interests are aligned with other class members' interests because they suffered the same injuries--monetary losses resulting from [Defendant's allegedly unlawful practices]." *In re GSE Bonds*, 414 F. Supp. 3d at 692; *Nichols*, 2022 WL 2705354, at *8 (same); *see also In re Tether and Bitfinex Crypto Asset Litig.*, No. 19-CV-9236, 2026 WL 629826, at *6 (S.D.N.Y. Mar. 6, 2026) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class[.]" (citation modified)).

Further, Plaintiffs "have demonstrated their commitment to this litigation by retaining qualified and experienced counsel." *Cruz Guerrero*, 2025 WL 100889, at *5; *Kohari*, 2025 WL 100898, at *6 (same). Plaintiffs also contributed significant time and effort to the case, meeting numerous times with Class Counsel, providing detailed background information, reviewing and discussing the pleadings and, where applicable, discovery, and providing their records for review and production in discovery. Counsel Decl. ¶ 53. Plaintiffs also supported Class Counsel in connection with the mediations. *Id.* In sum, Plaintiffs' participation in this case was significant and critical.

Class Counsel also meet the adequacy requirement. Wittels McInturff Palikovic attorneys have extensive experience in prosecuting complex consumer and employment class actions. Counsel Decl. ¶ 4. Wittels McInturff Palikovic attorneys have served as Class Counsel in many

consumer protection class actions—including class actions challenging automatic renewal and cancellation practices—and have obtained many millions of dollars in recoveries for class members. *Id.* ¶ 5. Further, Wittels McInturff Palikovic has dedicated substantial time and resources investigating, prosecuting, and resolving this case. *Id.* ¶ 12. Bryson Harris Suciu & DeMay PLLC attorneys likewise have served as Class Counsel in many consumer protection class actions with millions of dollars in recoveries for class members. *Id.* ¶¶ 16–18, 20. The work that Class Counsel have performed here demonstrates their skill and commitment to representing the Class. *Id.*

### B. Presence of Arm's-Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times

"The existence of arm's-length negotiations . . . counsels in favor of approving [a] settlement on a preliminary basis." *Zimmerman*, 2025 WL 763734, at *4. "Rule 23(e)(2)(B) requires a court to consider whether a proposed settlement 'was negotiated at arm's length.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)(B)). Though "Courts in the Second Circuit may no longer apply a presumption of fairness to proposed settlements that arise from arm's length negotiations," *see In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239, 2023 WL 7936207, at *3 n.4 (E.D.N.Y. Nov. 15, 2023) (citing *Moses*, 79 F.4th at 243), it remains true that "the arms-length quality of . . . negotiations remain[s] a factor in favor of approving [a] settlement." *Moses*, 79 F.4th at 243. "[E]xtensive pre-negotiation discovery," as well as representation of the parties by "experienced counsel who were then aided in their negotiations by an experienced mediator" also "suggests that the [s]ettlement is the result of good faith arm's-length negotiations." *Reyes v. Summit Health Management, LLC*, No. 22-CV-9916, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024); *Grissom v. Sterling Infosys., Inc.*, No. 20-CV-7948, 2024 WL 4627567, at *4 (S.D.N.Y. Oct. 30, 2024) (finding "good faith arm's length negotiations" where plaintiff's counsel "engaged in at least twelve months of discovery, involving detailed review of thousands of pages of documents and

data" allowing parties "a full opportunity to acquaint themselves with the strength and weaknesses of their respective cases" and reached settlement with assistance of a mediator); *see also Goidel*, 2024 WL 4441806, at *4 (similar). Here, the settlement was reached only after experienced counsel conducted considerable discovery, engaged in motion practice, and completed several amendments to the complaints, all of which illuminated the risks of litigation to the parties and provided sufficient information on the strength of the Class's claims. Furthermore, they engaged in vigorous arm's length negotiations overseen by an experienced class action mediator for nearly a year before reaching an agreement. *See* Counsel Decl. ¶¶ 35–38.

### C. Adequate Relief for the Class: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Litigation Risks

Rule 23(e)(2)(C) examines whether relief for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

"This inquiry overlaps with the Grinnell factors of 'complexity, expense, and likely duration of the litigation' [(*Grinnell* Factor 1)] along with 'the risks of establishing liability,' 'the risks of establishing damages' and 'the risks of maintaining a class through the trial [(*Grinnell* Factors 4-6)].'" *Zimmerman*, 2025 WL 763734, at *5 (quoting *Grinnell Corp.*, 495 F.2d at 463). The Rule 23(e)(2)(C) inquiry "does not displace" the *Grinnell* factors. *Moses*, 79 F.4th at 244.

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable pre-trial settlement, the parties avoid risk, expense, and delay and instead ensure a substantial recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."

*Jackson*, 2025 WL 2346065, at *7 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)); *Cruz Guerrero*, 2025 WL 100889, at *7 ("Class action suits have a well-deserved reputation as being most complex[.]" (citation modified)). This case is no exception, with approximately 1,139,000 Class Members and complex legal and factual claims.

Continued litigation will only add expense and delay. While discovery has been robust, extensive additional discovery will be needed for class certification and trial. The parties would also likely file summary judgment motions. If the Court denied the motions, a lengthy, fact-intensive trial would consume tremendous time and resources. Further, any judgment would likely be appealed, adding further uncertainty and delay. In contrast, the settlement provides substantial relief to the Class in a prompt manner and avoids the risks and costs inherent in class actions.

The first *Grinnell* factor heavily favors approval. *See, e.g.*, *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-CV-3538, 2023 WL 3749996, at *4 (S.D.N.Y. June 1, 2023) ("[I]nherent in the complexity of the allegations is the inevitability of lengthy and costly discovery and motion practice if the case continued through litigation" and this complexity "weigh[s] in favor of preliminary approval"); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480, 2021 WL 5578665, at *4 (S.D.N.Y. Nov. 30, 2021) ("[T]he settlement brings to a close litigation that could have lasted several more years and costs [*sic*] hundreds of thousands of dollars in attorneys' fees and expenses and brings immediate relief to the class[.]"); *Cruz Guerrero*, 2025 WL 100889, at *7 (factor favors approval because "litigation through trial would be complex, expensive, and long").

2. Plaintiffs Face Real Risks if the Case Proceeds (*Grinnell* Factors 4 to 6)

Although Plaintiffs believe this case is strong, there are risks to proceeding. In weighing the risks of establishing liability and damages, "the Court need not adjudicate the disputed issues

or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Gonzalez v. Northwell Health, Inc.*, --- F.R.D. ----, 2026 WL 2633213, at *8 (E.D.N.Y. 2026) (citation modified); *Cruz Guerrero*, 2025 WL 100889, at *8 (same).

Moreover, this inquiry focuses on the Class's prospects, which underscores the hurdles to achieving and maintaining class certification through trial. Prior to settlement, Plaintiffs had begun work on class certification and fully "anticipate[d] that Defendants would oppose class certification as vigorously as [they] had contested Plaintiffs' allegations and discovery requests." *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059, 2024 WL 1719632, at *8 (E.D.N.Y. Apr. 22, 2024) (citation modified) (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-CV-5575, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006)). "There is no assurance that [plaintiffs'] motion for class certification would be granted, and . . . [d]efendants would likely have challenged class certification [if] they [had] continued in this litigation." *Puddu v. 6D Global Techs., Inc.*, No. 15-CV-8061, 2021 WL 1910656, at *5 (S.D.N.Y. May 12, 2021); *see also Quow v. Accurate Mech. Inc.*, No. 15-CV-9852, 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018) (trial involves overcoming argument "claims were individualized and not suitable for class treatment.").

While Class Counsel believe the Court would certify the Class, this ruling would be reached only after extensive litigation, including more discovery, depositions, expert discovery, and lengthy briefing. *See, e.g.*, *Guevoura Fund Ltd. v. Sillerman*, No. 15-CV-7192, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) ("Simply completing the pre-trial proceedings would have involved considerable additional discovery; taking dozens of depositions; defense of the depositions; preparation of complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing

on motions for summary judgment, motions to strike experts and other motions *in limine* likely to be made[.]"); *Marin v. 310 Bowery Grp. LLC*, No. 24-CV-1340, 2025 WL 893731, at *7 (S.D.N.Y. Mar. 24, 2025) (similar). Either party (or both) could also seek an interlocutory appeal of a certification order under Rule 23(f), *In re GSE Bonds*, 414 F. Supp. 3d at 693, and Nord could seek to decertify the class as the case proceeded to trial, *see*, *e.g.*, *Lawrence v. NYC Med. Practice, P.C.*, No. 18-CV-8649, 2024 WL 307842, at *2 (S.D.N.Y. Jan. 26, 2024) (citation modified) (Courts "may decertify a class if it appears that the requirements of Rule 23 are not in fact met." (citation modified)).

"[A] settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids." *Belton v. GE Cap. Consumer Lending, Inc.*, No. 21-CV-9492, 2022 WL 407404, at *5 (S.D.N.Y. Feb. 10, 2022) (citation modified). Moreover, "[a] trial on the merits is inherently risky." *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854, 2021 WL 535635, at *4 (S.D.N.Y. Feb. 12, 2021) (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 313 (S.D.N.Y. 2020) (citation modified).

While Plaintiffs believe in their case, the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain. That the settlement ends these uncertainties favors preliminary approval. *See, e.g.*, *Marin*, 2025 WL 893731, at *7 (finding settlement represented favorable outcome "particularly when balancing the parties' claims and defenses and the risks and uncertainties of continued litigation"); *Quow*, 2018 WL 3368673, at *3 (risks as to both liability and damages, including overcoming defenses, weighed in favor of final approval).

### D. Effectiveness of the Proposed Method of Distributing Relief: A Simple Claims Process and a Fair Allocation

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the parties' proposed method for processing Class Members' claims and distributing relief includes well-established, effective procedures, including the latest best practices for incentivizing claims. Specifically, Class Members will receive an email with the subject line "Notice of Refund from NordVPN," which is based on a 2019 Federal Trade Commission study of class action notices that found "Notice of Refund" had "substantially higher stated opening rates than other subject lines." F.T.C., *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, at 59, (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

When opened, this email will provide a hyperlink to the appropriate Claim Form. Ex. 3. Once a PIN provided in the email is entered, Class Members will find a simple Claim Form that only requires Class Members to enter their name, address, email address, Notice ID from the emailed notice, and select their preferred payment method. Ex. 7. The Claim Form process is designed to take only three minutes and Class Members are told as much from the get-go. Counsel Decl. ¶ 47. As noted in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, "[i]t is important to capture attention with a prominent headline (like a newspaper article does). This signals who should read the notice and why it is important. The overall layout of the notice will dictate whether busy class members will take time to read the notice and learn of their rights."[8] The parties are also working with the

[8] https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Settlement Administrator to further ease completion of the form by pre-populating the Class Member's Notice ID and email address into the Claim Form. *Id.*

While the allocation plan "must be fair and adequate," *Pearlstein v. Blackberry Ltd.*, No. 13-CV-7060, 2022 WL 4554858, at *8 (S.D.N.Y. Sept. 29, 2022), it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel," *Piney v. City of New York*, No. 25-CV-671, 2026 WL 2495247, at *8 (S.D.N.Y. Aug. 25, 2026) (citation modified); *see also id.* ("A plan for allocating settlement funds need not be perfect[]"). "Numerous courts have held [that] a plan of allocation need not be perfect." *In re Graña y Montero S.A.A. Sec. Litig.*, No. 17-CV-1105, 2021 WL 4173684, at *15 (E.D.N.Y. Aug. 13, 2021).

Here, the allocation plan tracks Plaintiffs' damages model and the allocation to each Class Member is based on their proportionate share of renewal fees paid. This is a reasonable, rational basis for allocation. *See Zimmerman*, 2025 WL 763734, at *5 ("When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." (citation modified)); *see also Lea*, 2021 WL 5578665, at *11 (collecting cases). A fundamentally fair allocation like the one proposed here easily meets the approval criteria. *See id.* (approving distribution based on overall loss for each class members' transactions and finding that class members were treated "equitably relative to each other"); *see also Gong v. Neptune Wellness Sols. Inc.*, No. 21-CV-1386, 2023 WL 6594352, at *2 (E.D.N.Y. July 18, 2023) (approving as reasonable allocation plan distributing fund "on a *pro rata* basis based on the relative size of their claims").

### E. The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Request Is Well Within Second Circuit Norms

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." The Settlement Agreement authorizes Class

Counsel to request that the Court approve attorneys' fees of one third of the settlement's $18,000,000 cash portion (*i.e.*, $6,000,000). *See* SA ¶ 104.

1. <u>Attorneys' Fees of One-Third Percentage Are Common in the Second Circuit</u>

The request authorized by the Settlement Agreement is consistent with fee awards in this Circuit. *See, e.g.*, *Cruz Guerrero*, 2025 WL 100889, at *10 ("Courts in this Circuit routinely find that a percentage of fund award is appropriate and that a one-third percentage is fair and reasonable."); *Krasnansky v. JCCA*, No. 22-CV-6577, 2023 WL 6141240, at *6 (S.D.N.Y. Sept. 20, 2023) ("Given that Plaintiff's counsel's request for 33% of the total settlement is in line with common practice in the Second Circuit, the Court finds the request reasonable." (citation modified)).

Courts in this District and Circuit routinely approve one-third fee requests in similarly sized settlements. *See, e.g.*, *Diaz v. N.Y. Paving, Inc.*, No. 18-CV-4910, 2026 WL 1746076, at *3 (S.D.N.Y. June 17, 2026) (approving one-third fee in $19.25 million settlement); *Genesee Cnty. Employees' Ret. Sys. v. DocGo Inc.*, No. 23-CV-9476, 2026 WL 810233, at *1 (S.D.N.Y. Mar. 24, 2026) (approving one-third fee in $12.5 million settlement); *Lozada v. TaskUs, Inc.*, No. 22-CV-1479, 2025 WL 3125848 (S.D.N.Y. Nov. 6, 2025), *R. & R. adopted*, 2025 WL 3482752 (S.D.N.Y. Dec. 4, 2025) (approving request for 30% of $17.5 settlement)*; In re Y-mAbs Therapeutics, Inc. Sec. Litig.*, No. 23-CV-431, 2024 WL 5082773, at *2, 4 (S.D.N.Y. Oct. 29, 2024) (awarding one-third in attorneys' fees for $19,650,000 settlement); *Caste v. Trustees of Columbia Univ. in City of New York*, No. 16-CV-6524, 2021 WL 4847890, at *2 (S.D.N.Y. Oct. 18, 2021) (one third in $13 million settlement); *see also Zimmerman v. Paramount Global*, No. 23-CV-2409, 2025 WL 763734, at *5 (S.D.N.Y. Mar. 11, 2025) (preliminarily approving one-third in attorneys' fees for $11 million settlement and noting that "a fee award of an amount not to exceed one-third of the

[settlement] plus reasonable out-of-pocket costs [] is consistent with what other courts in this District have approved" (collecting cases, citation modified)).[9] The settlement term governing Class Counsel's anticipated fee and expense request was also subject to arms-length negotiations, was facilitated by an experienced mediator, and will be disclosed to the Class. Counsel Decl. ¶ 57.

2. <u>*Kurtz* Does Not Alter Courts' Assessment of Fees in Common Fund Cases</u>

The Second Circuit has recently provided guidance on how to implement Rule 23(e)(2)(C)(iii) following the 2018 amendments. Specifically, "when reviewing the substantive fairness of a proposed settlement," the district court should "'review both the terms of the settlement and any fee award encompassed in a settlement agreement' in tandem." *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 118 (2d Cir. 2025) (quoting *Moses*, 79 F.4th at 244). Doing so requires the court "to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Id.* at 118–19 (citing Fed. R. Civ. P. 23(e)).

[9] Courts in other circuits also commonly award one-third fees in similarly sized class actions. *See, e.g.*, *Branson v. All. Coal, LLC*, No. 19-CV-155, 2025 WL 3068616, at *7 (W.D. Ky. Nov. 3, 2025) (approving request for attorney fee award of one-third of $15,205,000 settlement); *Budicak Inc. v. Lansing Trade Grp., LLC*, No. 19-CV-2449, 2023 WL 7189144, at *1 (D. Kan. June 16, 2023) (one third of $18 million); *In re Banc of Cal. Sec. Litig.*, No. 17-CV-118, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (one third of $19.75 million).

This Settlement is a common fund settlement,[10] where attorney fee awards of one third plus costs have consistently been found reasonable.[11, 12] And as common fund cases post-*Kurtz* make clear, *Kurtz* changes little about the ultimate assessment of attorneys' fees in common fund settlements, which, under both Rule 23(e)(2)(C)(iii) and Rule 23(h), assess the reasonableness of fees from the perspective of the Class. *Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974, 2025 WL 2960237, at *11 (E.D.N.Y. Oct. 20, 2025) ("*Kurtz* did not change the approach taken to assess the fairness of a class settlement in common fund cases."); *see also Lozada v. TaskUs, Inc.*, No. 22-CV-1479, 2025 WL 3125848, at *7 (S.D.N.Y. Nov. 6, 2025), *R. & R. adopted*, No. 22-CV-1479, 2025 WL 3482752 (S.D.N.Y. Dec. 4, 2025) (finding award of 30% or 35.3% of overall settlement value (depending on whether expenses included in calculation) "reasonable in relation to the benefits to be realized by the Class" for purposes of Rule 23(e)(2)(C)(iii)); *Robertson v.*

---

[10] No amount paid by Defendants will revert to them unless the Settlement is terminated or fails to become effective. SA ¶ 59. Instead, all funds not paid as settlement administration expenses, approved by the Court as attorneys' fees and costs or as service awards, or set aside to establish the $250,000 reserve fund required by the Settlement Agreement, will be distributed to Class, including via additional distributions to Class members if economically feasible. SA ¶ 60. And any residual funds that are not economically feasible to distribute to the Class, as well as any funds not distributed from the reserve fund, will be distributed to cy pres recipients, not returned to Defendants. *Id.* ¶¶ 16, 39.

[11] *See, e.g.*, *Hezi v. Celsius Holdings, Inc.*, No. 21-CV-9892, 2023 WL 2786820, at *5 (S.D.N.Y. Apr. 5, 2023) (fee award of 33% of settlement fund was "consistent with fee awards in other similar settlements approved in this District"); *see also Emeterio v. A&P Rest. Corp.*, No. 20-CV-970, 2022 WL 274007, at *9 (S.D.N.Y. Jan. 26, 2022) ("Fee awards representing one third of the total recovery are common in this District" (citation modified)).

[12] "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *Chen-Oster v. Goldman Sachs & Co.*, No. 10-CV-6950, 2023 WL 7325264, at *5 (S.D.N.Y. Nov. 7, 2023). "Courts typically allow counsel to recover their reasonable out-of-pocket expenses" separately from fees paid as a percentage of the common fund. *DeLeon v. Wells Fargo Bank, N.A.*, No. 12-CV-4494, 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015) (awarding costs separately, and in addition to, percentage-of-recovery attorneys' fees award of one-third of common fund); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96-CV-1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) ("In this district alone, there are scores of common fund cases where fees alone (i.e., where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund.").

*Trinity Packaging Corp.*, No. 19-CV-659, 2025 WL 2224586, at *13 (W.D.N.Y. Aug. 5, 2025) (finding one-third "baseline" fee reasonable under Rule 23(e)(2)(C)(iii)).

Moreover, Class Counsel's efforts over nearly three years yielded not only $18,000,000 in cash, but also business practice changes valued at $18,000,000. SA ¶ 49. In awarding attorneys' fees, it is well settled that "[c]ourts include the value of both the monetary and non-monetary benefits conferred on the Class." *Fleisher*, 2015 WL 10847814, at *15; *see also id.* at *10 ("The overall value of the settlement comprises monetary as well as non-monetary relief."). "Leading authorities agree, as do courts in this Circuit and nationwide." *Id.* at *15 (collecting authorities).[13] "The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of injunctive relief through objective criteria: 'an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future.'" *Id.* at *15. That method was used to calculate the value of the non-monetary relief obtained here. Counsel Decl. ¶ 59.

Thus, when considering both the $18,000,000 each in cash and business practice changes, the requested fee represents 16.7% of the $36,000,000 total settlement value. *Id.* ¶ 56. The requested fee is thus at the low end of the typical fee percentage, as a fee of one third (or 33.33%)

[13] *See also Sykes v. Harris*, No. 09-CV-8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (considering value of non-monetary relief in setting class counsel fees); *Bell v. Pension Comm. of ATH Holding Co.*, No. 15-CV-2062, 2019 WL 4193376, at *4 (S.D. Ind. Sept. 4, 2019) (including nearly $34 million in non-monetary value in assessing class counsel's fee request); *Tennille v. W. Union Co.*, No. 09-CV-938, 2013 WL 6920449, at *10 (D. Colo. Dec. 31, 2013) (adding $46,560,596 in non-monetary value to $19,000,000 in available refunds and awarding fee of 35% ($22,946,208) of $65,560,596 because a fee based solely on the monetary component "would severely undervalue class counsel's efforts in obtaining the [non-monetary] relief and other benefits included in the [settlement]."); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (awarding fee based on non-monetary relief of "between $26 million and $38 million"); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. Ed., at 35 (2010) (basing fees on the "actual value to the class of any settlement fund *plus* the actual value of any nonmonetary relief") (emphasis added); Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010, § 3.13 (noting fee awards are to be "based on both the monetary *and* nonmonetary value of the judgment or settlement") (emphasis added).

of the total settlement value has repeatedly been held "consistent with the norms of class litigation in this Circuit." *Solis v. OrthoNet* LLC, No. 19-CV-4678, 2021 WL 2678651, at *4 (S.D.N.Y. June 30, 2021); *Bryant v. Potbelly Sandwich Works*, No. 17-CV-7638, 2020 WL 563804, at *6 (S.D.N.Y. Feb. 4, 2020). Or, considered another way, when the $6,000,000 fee request authorized by the Settlement Agreement is compared to the portion of the $36,000,000 overall value of the Settlement made available to the Class after accounting for administration expenses, litigation expenses, and service awards, it yields a ratio of attorneys' fees to Class recovery of roughly 1:5. Courts in this Circuit approve fee ratios far less favorable to the class than this one, including ratios where fees ***outweigh*** a class's recovery.[14] Class Counsel's requested fee award is highly reasonable in relation to the results achieved.

3. <u>The Fee Request Authorized by the Settlement Agreement Is Consistent with Public Policy</u>

Finally, Class Counsel's anticipated fee and expense request is consistent with public policy, because if the "important public policy [of remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *see also, e.g.*, *Lea*, 2021 WL 5578665, at *13 ("[P]ublic policy favors the award of reasonable attorneys' fees in class action settlements." (citation modified)); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv.*

[14] *See, e.g.*, *Everetts v. Pers. Touch Holding Corp.*, No. 21-CV-2061, 2025 WL 942800, at *3–4 (E.D.N.Y. Mar. 28, 2025) (approving roughly $300,000 in attorneys' fees where class received, *inter alia*, $98,284.88 in monetary relief and $50,000 in credit monitoring services); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 385–86 (E.D. Pa. 2019) (approving roughly $1.1 million in attorneys' fees where class received $211,255 in monetary relief and $286,986.50 in in-kind relief); *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995, 2025 WL 2773748, at *5, *11 (E.D.N.Y. Sept. 29, 2025) (concluding settlement agreement provisions providing 19:1 ratio of fees to actual recovery "do not preclude the Court from approving settlement," and ultimately approving fee ratio of approximately 12.5 to 1, plus an additional $1,219,564.45 in costs and expenses.).

*Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) ("Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases, like this one, that serve the public interest.").[15] Plaintiffs believe that the Settlement will also provide a deterrent effect that will carry over to other market participants. Further, "[c]ourts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis." *Kohari v. MetLife Grp., Inc.*, No. 21-CV-6146, 2025 WL 100898, at *12 (S.D.N.Y. Jan. 15, 2025).

* * *

Simply put, the requested attorneys' fee is reasonable and is in the typical range of class action fees approved in the Second Circuit.[16] The Court need not rule on the ultimate issue now though, as pursuant to Rule 23(h), Plaintiffs will move for final court approval of Class Counsel's fee and expense request simultaneously with the Motion for Final Approval of the Settlement.[17]

---

[15] *See also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6888488, at *21 (E.D.N.Y. Dec. 16, 2019) (to "attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives") (citation modified); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 501 (S.D.N.Y. 2017) ("[i]t is surely in the interest of public policy . . . that the risk analysis is designed to compensate [class] counsel" for "accepting representation" of claims which involve substantial contingency risk); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (if the "important public policy [of remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

[16] With their request for final approval, Class Counsel will also demonstrate using the lodestar cross-check methodology that their requested fee is reasonable and commensurate with the thousands of hours worked to achieve this excellent result. Counsel Decl. ¶ 58 n.4.

[17] Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Here, there are none.

### F. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Alleged Damages and Is Reasonable

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." *See also Moses*, 79 F.4th at 244. Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Notes to Fed. R. Civ. P. 23. Here, the settlement treats individual Class Members fairly in relation to their realistic outcomes at trial. As discussed above, *supra* p. 21, the allocation plan tracks Plaintiffs' damages model used at mediation and Class Members' awards are keyed to their alleged losses. Further, the same mutual release applies to all Class Members, SA ¶¶ 72–81, and does not affect the apportionment of relief, demonstrating equity. *In re GSE Bonds*, 414 F. Supp. 3d at 698–99.

### G. The Remaining *Grinnell* Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate

1. The Reaction of the Class (*Grinnell* Factor 2)

Notice of the settlement and its details has not yet been issued. The Court should therefore analyze this factor after the Class responds. At this early stage, this factor is neutral.

2. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would likely require many hundreds (if not thousands) of hours of additional discovery, the parties have completed more than enough discovery to recommend settlement. The question raised by this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Jackson*, 2025 WL 2346065, at *8. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement, but [are] an aggressive effort to ferret out facts helpful to the

prosecution of the suit." *McIntosh v. Katapult Holdings, Inc.*, No. 21-CV-07251, 2024 WL 5118192, at *9 (S.D.N.Y. Dec. 13, 2024) (citation modified).

The discovery described above at pp. 3–4 easily hurdles this standard. *See Goidel*, 2024 WL 4441806, at *4 (parties engaged in "over twelve months of discovery" involving significant document review and "resol[ution of] a substantial discovery dispute between the parties"); *see also Reyes*, 2024 WL 472841, at *3 (parties engaged in "seven months of discovery . . . that included a review of [defendant]'s internal communications and correspondence with insurance companies"); *Piney v. City of New York*, No. 25-CV-671, 2025 WL 3089894, at *10 (S.D.N.Y. Nov. 5, 2025) (finding factor weighed in favor of approval where parties "exchang[ed] and analyz[ed] . . . employment records, calculat[ed] the damages due . . . , engag[ed] in substantial and arm's length settlement discussions, and exchang[ed] numerous settlement proposals, damages calculations, and additional data"); *Soler v. Fresh Direct, LLC*, No. 20-CV-3431, 2023 WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023) ("meaningful discovery" included production of "class member data," "corporate training documents," corporate policies, and class member files).

3. Although Defendants Likely Could Withstand a Greater Judgment, That Does Not Suggest the Settlement Is Unfair (*Grinnell* Factor 7)

Class Counsel found no reason to question Nord's ability to satisfy a larger judgment. The parties are settling the claims based on Class Counsel's damages valuation as opposed to providing a discount due to any inability to pay. "[A]lthough the proposed . . . settlement may be less than Defendants' theoretical capacity to pay, . . . the settlement provides reasonable value based on Class Members' actual claims." *Swanson v. Manhattan Beer Distribs., LLC*, No. 15-CV-5383, 2026 WL 850837, at *12 (E.D.N.Y. Mar. 27, 2026). Thus, this factor favors settlement. *Id.*

4. The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The fairness assessment "'is not susceptible of a mathematical equation yielding a particularized sum.'" *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-982, 2023 WL 2184496, at *16 (E.D.N.Y. Feb. 16, 2023) (quoting *In re PaineWebber*, 171 F.R.D. at 130); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-6728, 2020 WL 4196468, at *12 (S.D.N.Y. July 21, 2020) (same). "[T]he question . . . is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ." *Puddu*, 2021 WL 1910656, at *6 (citation modified).

Here, the settlement is substantial: a cash fund of $18,000,000 and business practice changes valued at an additional $18,000,000. Even if the Court were to only consider the $18,000,000 in cash relief, this sum corresponds to 13.9% of the $129,863,936 of the total non-refunded renewal charges during the Class Period that Plaintiffs calculated from Nord's business records as maximum recovery for settlement purposes, a damages theory which Nord disputes. Counsel Decl. ¶ 46. This settlement amount is eminently reasonable. *See In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court award of 6.1% of total damages as fair, reasonable and adequate); *McIntosh*, 2024 WL 5118192, at *10 (approving settlement of 5.22% of estimated classwide damages); *see also id.* ("Courts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness" (citation modified)); *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *14 (settlement valued between "15% and 24% of reasonable recoverable damage" "likely represent[ed] the best possible recovery"); *Puddu*, 2021 WL 1910656, at *6 (settlement valued at 6.05% of possible recovery was reasonable); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704, 2019 WL 6842332, at *4 (S.D.N.Y. Dec. 16, 2019) (settlement valued at 10.9% to 21.3% of

possible recovery was reasonable); *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MD-1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (settlement valued at 10–15% of unlawful fees collected).

* * *

In sum, both the Rule 23(e) and *Grinnell* factors favor preliminary approval. Because the settlement is "fair, adequate, and reasonable, and not the product of collusion," *Guevoura*, 2019 WL 6889901, at *4 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)), preliminary approval should be granted.

## V. THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiffs seek to certify the following class under Rule 23:

> All persons in the United States who at any time between April 26, 2020, and January 1, 2025 enrolled in an automatically renewing subscription to a Nord Service through the Nord Websites and paid at least one subscription renewal charge that was not later fully refunded.

SA ¶ 10. As discussed below, the Class meets the requirements for class certification, and Defendants agree that this action may be certified as a class action for settlement purposes only. *Id.* ¶ 47; *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

Under Rule 23, a class action may be maintained if the four Rule 23(a) criteria are met and one of the three Rule 23(b) criteria is satisfied. Plaintiffs request certification of a Rule 23(b)(3) class and thus must satisfy Rule 23(b)(3)'s requirements. Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires courts to find that:

> [Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"[T]he Second Circuit has emphasized that Rule 23 should be given 'liberal rather than restrictive construction,'" *In re Actos Antitrust Litig.*, No. 13-CV-9244, 2024 WL 4251891, at *6 n.6 (S.D.N.Y. Aug. 9, 2024), and "the Second Circuit's general preference is for granting rather than denying class certification," *id.* (citation modified).

**A. <u>Numerosity</u>**

"[I]n this Circuit, 'numerosity is presumed at a level of 40 members.'" *Renois v. WVMF Funding, LLC*, No. 20-CV-9281, 2026 WL 2240388, at *5 (S.D.N.Y. July 30, 2026) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Here, there are approximately 1,139,000 Class Members. Counsel Decl. ¶ 42. This element is easily satisfied.

**B. <u>Commonality</u>**

The Class also satisfies the commonality requirement. "Factual differences in the claims of the class do not preclude a finding of commonality." *Cruz Guerrero*, 2025 WL 100889, at *4 (citation modified). Put simply, "[c]ommonality may be found where the plaintiffs' alleged injuries derive from a unitary course of conduct by a single system." *Id*. (citation modified); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

Here, Plaintiffs allege that the common questions include whether Nord's auto-renewal disclosures and cancellation practices complied with the various state automatic renewal laws and common law duties at issue, and whether Nord's standardized charging practices—applied uniformly to all Class Members through the Nord Websites—gave rise to liability under the statutes identified above. *Supra* pp. 2 (citing CAC ¶¶ 233–404). Courts in this District routinely find commonality when presented with common questions similar to those at issue here. *See, e.g.*, *Nichols*, 2022 WL 2705354, at *5 ("Here, the common questions of law and fact in this case all relate to whether Defendants engaged in fraudulent, unfair, unlawful, and deceptive business practices"); *McIntosh*, 2024 WL 5118192, at *6 (common questions include whether defendants "engaged in a common scheme to defraud").

### C. <u>Typicality</u>

"Typicality . . . is satisfied where each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Charles v. Pinnacle Too, LLC*, No. 22-CV-4232, 2024 WL 4491560, at *6 (S.D.N.Y. Oct. 15, 2024) (citation modified). "The typicality requirement is not demanding." *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347, 2024 WL 1157074, at *5 (S.D.N.Y. Mar. 18, 2024) (citation modified). Typicality is met when the disputed issues "occupy essentially the same degree of centrality" between the named representatives and the class. *Id.*

Like commonality, typicality is not defeated by "minor variations in the fact patterns underlying individual claims," *Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 11 (S.D.N.Y. 2024) (citing *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)), as long as the alleged wrong occurred in the same general fashion. "Cases within this Circuit have repeatedly emphasized that typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with

respect to particularized defenses it might have against certain class members." *In re DiDi Glob. Inc. Sec. Litig.*, No. 21-CV-5807, 2025 WL 1909295, at *10 (S.D.N.Y. July 7, 2025), *R. & R. adopted,* No. 21-CV-5807, 2025 WL 2345696 (S.D.N.Y. Aug. 13, 2025) (citation modified). Here, Plaintiffs allege typicality is met because all Class Members were "exposed to the same [practices and] will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase[.]" *Nichols*, 2022 WL 2705354, at *5 (citation modified).

**D. Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, as set forth above, *supra* pp. 13–14, Plaintiffs meet the adequacy requirement. *See Pinnacle Too*, 2024 WL 4491560, at *6 ("[T]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class" (citation modified)). Class Counsel also meet this requirement. As set forth above, they have been able advocates for the Class. *Supra* pp. 14–15.

**E. Certification Is Proper Under Rule 23(b)**

Plaintiffs seek certification of a Rule 23(b)(3) class for settlement purposes. Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1. Common Questions Predominate

The essential predominance inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Leone v. ASP Isotopes Inc.*, 811 F. Supp. 3d 563, 619 (S.D.N.Y. 2025) (citing *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). That a defense "may arise and [] affect different class members

differently does not compel a finding that individual issues predominate over common ones." *Hines v. Equifax Info. Servs. LLC*, No. 19-CV-6701, 2024 WL 4132333, at *5 (E.D.N.Y. Sept. 10, 2024) (citing *In re Visa Check*, 280 F.3d at 138). Predominance is met when class members' claims "rely on a common legal theory." *Gonzalez*, 2024 WL 1157074, at *6 (citation modified). Thus, courts often find predominance in consumer protection cases like this one. *See Est. of Loguidice v. Gerber Life Ins. Co.*, No. 20-CV-3254, 2025 WL 3764748, at *1 (S.D.N.Y. Dec. 30, 2025) ("[P]redominance is a test readily met in certain cases alleging consumer or securities fraud[.]" (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).

Here, Plaintiffs allege that Class Members' common experience yields a common legal theory that predominates over any factual or legal variations among Class Members—that Nord's public-facing auto-renewal practices allegedly violated various state consumer protection laws and gave rise to liability under common law theories. Thus, Plaintiffs claim that whether all Class Members were the victims of unlawful and deceptive practices predominates because "liability can be determined on a class-wide basis[.]" *Leone*, 811 F. Supp. 3d at 619 (quoting *In re Visa Check*, 280 F.3d at 139). A finding of predominance here is thus squarely in line with other cases in this District.[18]

2. A Class Action Is a Superior Mechanism for Adjudicating Claims

The second Rule 23(b)(3) prong examines whether the class device is superior to other methods of adjudication. *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

[18] *See, e.g.*, *Polvay*, 713 F. Supp. 3d at 12 (predominance met in class action under New York consumer protection statute); *Volino v. Progressive Cas. Ins. Co.*, No. 21-CV-6243, 2023 WL 2532836, at *7–9 (S.D.N.Y. Mar. 16, 2023) (same); *Famular v. Whirlpool Corp.*, No. 16-CV-944, 2019 WL 1254882, at *8–9 (S.D.N.Y. Mar. 18, 2019) (finding predominance in challenge to allegedly misleading labels under New York consumer protection law).

individual to bring a solo action prosecuting his or her rights."); *see also Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2024 WL 3928849, at *16 (S.D.N.Y. Aug. 13, 2024) (a class action is superior where it "will achieve significant economies of time, effort and expense, and promote uniformity of decision"). Rule 23(b)(3) lists non-exclusive considerations, including: the class members' interests in individually controlling the prosecution; whether class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3).[19]

Here, given the average non-refunded renewal charges calculated as maximum damages by Plaintiffs—$114.02—there is little incentive to bring individual actions. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). It is thus unlikely that any meaningful number of Class Members would bring separate actions given "the lack of incentive for individuals to bring suit." *In re Kind LLC "Healthy and All Natural" Litig.*, 337 F.R.D. 581, 608 (S.D.N.Y. 2021), *rev'd on other grounds*, 627 F. Supp. 3d 269 (S.D.N.Y. 2022). Plaintiffs and Class Counsel are unaware of any similar pending individual lawsuits filed by Class Members. Counsel Decl. ¶ 39. Moreover, many Class Members (if not most) likely do not appreciate that they have legal claims. *See de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 346 (S.D.N.Y. 2021) (noting that many consumers "may not even

[19] Another factor, whether the case would be manageable as a class action at trial, is not considered at settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Flores v. CGI Inc.*, No. 22-CV-350, 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022) (same); *Emeterio*, 2022 WL 274007, at *2 (same). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *Pearlstein v. Blackberry Ltd.*, No. 13-CV-7060, 2021 WL 253453, at *23 (S.D.N.Y. Jan. 26, 2021) (citation modified).

realize" potentially unlawful conduct occurred), *rev'd on other grounds*, No. 16-CV-8364, 2024 WL 36820 (S.D.N.Y. Jan. 3, 2024).

Employing the class action device here will also conserve judicial resources and prevent inconsistent adjudications. *See Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2023 WL 2919766, at *9 (S.D.N.Y. Apr. 12, 2023) ("The class action device is superior to other methods available for a fair and efficient adjudication of the controversy because the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." (citation modified)).

Finally, this action is manageable and the forum is appropriate, as Nord conducts substantial business in this District and Plaintiff Kandeh resides in this District. A class action is clearly the most suitable mechanism for this case.

## VI. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g), which governs appointing class counsel, sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g), Advisory Committee's note.

Class Counsel meet the Rule 23(g) criteria. Class Counsel have done substantial work identifying, investigating, litigating, and settling this case. Counsel Decl. ¶¶ 27–38. As detailed above, Class Counsel's investigation and prosecution of this action—spanning nine courts, seven

motions to dismiss, more than a dozen document productions across 18 volumes totaling thousands of pages, and analysis of over 67 million Class Member data points with the assistance of a retained data scientist—reflects exactly the kind of work, experience, and resource commitment Rule 23(g) contemplates. *Supra* pp. 3–4. Additionally, Class Counsel have substantial consumer class action experience, and the lawyers assigned to this matter are well-qualified and are well-versed in consumer protection and class action law. Counsel Decl. ¶¶ 10, 18. Wittels McInturff Palikovic and Bryson Harris Suciu & DeMay PLLC should be appointed Class Counsel.

## VII. THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED

Plaintiffs respectfully request that the Court approve the parties' notice plan (*supra* pp. 9–11). The notice plan fully complies with due process and Rule 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the notice plan satisfies each of these requirements and adequately apprises Class Members of their rights under the settlement. As for the Notice itself (Counsel Decl. Ex. 3), it is

based on the Federal Judicial Center's Illustrative Forms of Class Action Notices[20] and informs Class Members about the settlement, including how they can exclude themselves or object and the consequences of inaction. The Notice also describes the settlement's material terms, informs the Class about the allocation of attorneys' fees and service awards, and provides specific information regarding the date, time, and place of the final approval hearing. *See, e.g.*, *Jackson*, 2025 WL 2346065, at *11 (approving notices that "describe the settlement terms, inform the class about allocation of attorneys' fees and service awards, instruct each Class Member how to timely opt-out or object to the settlement, and provide specific information regarding the date, time, and place of the final approval hearing"). Courts in this District have approved class notices even when they provide only general information. *See, e.g.*, *Medina v. NYC Harlem Foods Inc*, No. 21-CV-1321, 2024 WL 2751127, at *1 (S.D.N.Y. May 29, 2024) ("Class notice need only describe the terms of the settlement generally[.]") (citation modified). Moreover, "[n]otice need not be perfect, but must be the best notice practicable under the circumstances[.]" *Martinenko*, 2024 WL 3928849, at *6 (citation modified); *see Christine Asia Co., Ltd. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (notice was adequate where it "provided all of the necessary information for Class Members to make an informed decision regarding the Settlement"). The detailed information in the Notice far exceeds this low threshold.

The parties' notice plan clearly satisfies Rule 23(c)(2)(B)'s requirement of "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." As shown above, *supra* pp. 9–11, the parties have designed a detailed notice plan that reflects best practices and contains numerous quality control measures to ensure that the notice will reach as many Class Members as possible.

[20] https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and endorse the proposed Order.

Dated: October 7, 2026
New York, New York

Respectfully submitted,

/s/ Ethan D. Roman

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman
J. Burkett McInturff
Tiasha Palikovic
Jessica L. Hunter
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Tel: (914) 775-8862
edr@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com
jlh@wittelslaw.com

**BRYSON HARRIS SUCIU & DEMAY PLLC**
Scott C. Harris*
900 W. MORGAN STREET
RALEIGH, NORTH CAROLINA 27603
Tel: (919) 600-5000
sharris@brysonpllc.com

* *Admitted pro hac vice*

*Co-Counsel for Plaintiffs and the Proposed Class*

**LOCAL CIVIL RULE 7.1 CERTIFICATION**

I certify that this Memorandum of Law complies with Local Civil Rule 7.1 in that the parties have jointly requested extending the 25-page limit for memoranda contained in Judge Ramos's Individual Practice § 2.B. *See* ECF No. 74.

Dated: October 7, 2026

By: /s/ Ethan D. Roman
Ethan D. Roman

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the documents submitted in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement Agreement and Related Relief was served via ECF this 7th day of October 2026 upon all counsel of record.

/s/ Ethan D. Roman
Ethan D. Roman