**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JORDAN ZEICHNER, TIM PETERSON, MICHAEL SASGEN, LANZY KANDEH, RENE TIO, JOHN DADDABO, DENNIS HANSCOM, and CRAIG SCHNAPPINGER

On Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

NORDVPN S.A., TEFINCOM SA D/B/A NORDVPN, AND NORDSEC B.V.,

Defendants.

Case No.: 1:25-cv-02571-ER

**JOINT DECLARATION OF ETHAN D. ROMAN AND SCOTT C. HARRIS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AND RELATED RELIEF**

Ethan D. Roman and Scott C. Harris declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. Wittels McInturff Palikovic ("WMP") and Bryson Harris Suciu & DeMay PLLC ("Bryson Harris") are counsel for Plaintiffs and the proposed Class. Based on our active participation and supervision of all material aspects of the prosecution and settlement of this consumer class action, we have personal knowledge of the matters set forth herein.

2. We respectfully submit this Joint Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement Agreement and Related Relief (the "Preliminary Approval Motion"). Through the Preliminary Approval Motion, Plaintiffs seek

an Order: (1) granting preliminary approval of the proposed settlement embodied in the Class Action Settlement Agreement (the "Settlement Agreement" or "SA"), attached hereto as **Exhibit 1**; (2) preliminarily certifying the proposed Class for settlement purposes; (3) approving the parties' notice plan (the "Notice") and directing its execution; (4) appointing WMP and Bryson Harris as Class Counsel ("Class Counsel"); (5) scheduling the Final Approval Hearing; and (6) granting such other relief as the Court deems just and proper.[1]

## I. <u>Class Counsel's Background</u>

### A. <u>Ethan D. Roman</u>

3. I am counsel at Wittels McInturff Palikovic and have been part of the team responsible for handling this matter for my law firm since its inception. I have been admitted to practice law in New York for more than 11 years. I graduated from Cornell Law School in 2014. For the last 5.5 years, nearly all of my practice has been devoted to litigating consumer protection and employment class actions.

4. WMP attorneys have extensive experience in prosecuting complex consumer and employment class actions, including settling class actions, with particularized expertise in consumer protection matters.

5. WMP attorneys have served as Class Counsel in many consumer protection class actions—including class actions challenging automatic renewal and cancellation practices—and have obtained many millions of dollars in recoveries for class members.

6. For example, in 2022, WMP obtained a $62 million consumer class action settlement on behalf of nearly 2 million customers of diet company Noom, Inc., which was

[1] The proposed Order granting preliminary approval is attached hereto as **Exhibit 2**. The proposed Notice and long-form website notice are attached as **Exhibits 3** and **4**, respectively. The same documents are also attached to the Settlement Agreement as Exhibits E (proposed Order), D (proposed Notice), and C (long-form website notice).

approved by Southern District of New York Magistrate Judge Katharine A. Parker. In 2019, WMP obtained a $39 million settlement on behalf of a nationwide class of 45,000 home mortgage customers against Ocwen Loan Servicing LLC and Cross Country Home Services Inc., which was approved by Eastern District of New York Judge Nicholas G. Garaufis. The previous year, in 2018, the Supreme Court Commercial Part Judge in Kings County approved WMP's $29.75 million settlement for New York consumers victimized by Ambit Energy, a third-party energy supply company, in which almost 100,000 customers shared in the cash benefits.

7. Similarly, in 2025, Judge Cathy Seibel of the Southern District of New York approved a $5,750,000 class action settlement secured by WMP on behalf of approximately 32,000 customers of Manhattan Beer for alleged deceptive invoicing practices.

8. Further, WMP currently serves as Class Counsel in *Mirkin v. XOOM*, No. 18-CV-2949 (E.D.N.Y.), a consumer class action on behalf of more than 100,000 New York utility customers where the firm obtained class action certification and is currently overseeing trial preparation efforts.

9. In addition to consumer protection matters, WMP also prosecutes and settles wage and hour class actions. For example, in 2026, Magistrate Judge Gorenstein in the Southern District of New York approved a $19,250,000 wage and hour settlement secured by WMP on behalf of concrete and asphalt pavers in New York City. In 2020, WMP was appointed as Plaintiffs' Coordinating Counsel in a class-wide arbitration involving more than forty home care agencies. In 2021, WMP obtained a wage and hour settlement of $6,500,000 on behalf of workers, which was approved by Magistrate Judge Lois Bloom in the Eastern District of New York. And in 2024, WMP obtained a $3,500,000 settlement in another homecare case, which was approved by Judge Gregory Woods in the Southern District of New York.

10. The lawyers assigned to this matter are also well-versed in consumer protection law and in class action law and are highly qualified to represent the interests of the Class. Lawyers at WMP have represented classes of consumers and employees in more than a dozen class action lawsuits in state and federal courts throughout the United States, including many in this District. Their backgrounds and qualifications are detailed in WMP's firm resume.

11. Attached to this Declaration as **Exhibit 5** is a true and correct version of WMP's 2026 Firm Resume.

12. Further, WMP has dedicated substantial time and resources investigating, prosecuting, and resolving this case. The work that Class Counsel have performed in this case demonstrates our skill and commitment to representing the interests of the Class.

B. <u>Scott C. Harris</u>

13. I am the partner at Bryson Harris Suciu & DeMay, PLLC that is primarily responsible for handling this matter for my law firm.

14. I have been an attorney in good standing and practicing law for 20 years.

15. I regularly litigate complex cases and class actions throughout the country and have been appointed in leadership roles in numerous matters.

16. I have been appointed to leadership in the following case: *In re Lumexa Imaging Data Breach Litigation,* Case No. 5:26-cv-00339-BO (E.D.N.C.) (appointed as Interim Liaison Counsel); *In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litig.*, No. 15-cv-00018-JLL-JAD (D.N.J.) (member of the court-appointed Plaintiffs' Steering Committee in this MDL proceeding); *In Re: Allura Fiber Cement Siding Litig.*, 2:19-mn-02886 (D.S.C.) (member of the Plaintiffs' Steering Committee); *In Re: MI Windows and Doors, Inc*, Prods. Liab. Litig., 2:12- mn-00001, MDL No. 2333 (D.S.C.); *In Re: Atlas Roofing Corporation*

*Chalet Shingle Products Liability Litigation*, 1:13-md-02495 (N.D. Ga.) (Hon. Thomas W. Thrash, Jr.); *In re Generac Solar Power Sys. Mktg., Sales Practices, & Products Liab. Litig.*, No. 23-MD-3078, 2023 WL 5878523, at *1 (E.D. Wis. July 18, 2023) (co-lead counsel).

17. During the past several years, I have also been lead counsel, co-counsel, or local in numerous class actions which resulted in significant settlements to the classes: *Sewall et al v. Home Partners Holdings LLC et al*, (N.D.IL) No. 1:25-cv-07849 (national settlement of $34,000,000 for tenants of Home Partners); *Braun v. Dolgencorp LLC d/b/a Dollar General*, Case No. MID-L-00950-25, (Sup. Ct. NJ) (Middlesex County) ($15,000,000 settlement for Dollar General consumers); *Rowland v. Mid-Am. Apartments, LP*, No. 1:18CV43 (M.D.N.C.) (total settlement value of $1,100,000.00); *Dugan v. Nationstar Mortgage, LLC*, No. 1:21-CV-00341 (M.D.N.C.) (total settlement value of $10,550,000.00); *Corbin v. CFRA, LLC*, No. 1:15-cv-00405 (M.D.N.C.) (total settlement value of $1,725,000.00); *Koepplinger et al v. Seterus, Inc.*, No. 1:17-cv-995 (M.D.N.C.) (total settlement value of $7,000,000.00); *Wallace v. Greystar Real Estate Partners, LLC*, No. 1:18-cv-00501 (M.D.N.C.) (total settlement value of $4,500,000.00); *McCord v. PRG Real Estate Management, Inc.*, No. 1:20-CV-854 (M.D.NC.) (total settlement value of $525,000); and *Williams v. Pegasus Residential*, LLC, No. 1:18-cv-1030 (M.D.N.C.) (total settlement value of $1,249,459.55).

18. In addition, my firm is nationally recognized for prosecuting large, complex class actions, and have effectively represented numerous plaintiffs in consumer-protection actions, class actions, and complex business cases, typically as lead or co-lead counsel.

19. Attached to this Declaration as **Exhibit 6** is a true and correct version of my firm's resume.

20. I, and attorneys and professional staff at my firm, dedicated numerous hours and resources, diligently prosecuting this case and in support of Class settlement, demonstrating our commitment to the Class.

## II. Introduction to the Proposed Settlement and Relief Sought by Plaintiffs' Motion

21. The proposed settlement resolves the claims brought by Jordan Zeichner, Tim Peterson, Michael Sasgen, Lanzy Kandeh, Rene Tio, John Daddabbo, Dennis Hanscom, and Craig Schnappinger (collectively "Plaintiffs") against Defendants NordVPN S.A., Tefincom SA d/b/a NordVPN, and Nordsec B.V. (collectively, "Nord" or "Defendants").

22. Plaintiffs' Preliminary Approval Motion seeks preliminary approval of the settlement of this consumer protection class action—a settlement achieved following three years of investigation and litigation. Nord has already revised the practices at issue, and the parties have reached a settlement that establishes an $18,000,000 cash fund for the Class. Achieving resolution also required two full-day mediation sessions, held nearly a year apart, and overseen by an experienced and forceful class action mediator.

23. The final terms of the parties' settlement were memorialized in the Settlement Agreement that is now being submitted for the Court's preliminary approval. At all times, the parties' negotiations have been vigorous, adversarial, and conducted at arms-length. As set forth below, the three-year process from investigation to negotiated resolution resulted in a fair and reasonable settlement for Class Members.

24. The proposed settlement provides a monetary benefit to the Class in the form of a $18,000,000.00 Settlement Fund. As described herein, each Class Member is entitled to a *pro rata* share of the Settlement Fund. Cash payments will be distributed to Class Members on a pro rata basis in proportion to the non-refunded subscription payments they made.

25. In arriving at this favorable result, Plaintiffs also recognized the expense and length of a trial and potential appeals and further acknowledged that the ultimate success on the merits remains uncertain.

26. In the paragraphs that follow, we describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed Settlement Agreement. Accompanying this Declaration is Plaintiffs' supporting Memorandum of Law that demonstrates why, under governing law, this Court should preliminarily approve the settlement and grant the relief requested in Plaintiffs' Motion.

## III. Thorough Investigation of Class Members' Claims

27. Before commencing this litigation, and beginning in early fall 2023, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses in this action.

28. Class Counsel obtained and analyzed documents from Plaintiffs and other Nord customers and conducted extensive factual and legal research into potential experts, ultimately engaging both a database discovery and data science expert, and a user experience and user-centered design expert.

29. In addition, Class Counsel researched the pertinent case law and facts in other actions challenging subscription practices and conducted comprehensive legal research concerning the complexities of automatic renewal-based class actions.

## IV. Plaintiffs' Complaint, Discovery, and the Parties' Settlement Negotiations

30. On March 28, 2025, Plaintiff Kandeh filed his Class Action Complaint in this District. ECF No. 1. On August 3, 2026, Plaintiffs filed the CAC, which consolidated similar

actions pending (or terminated) in various other courts (the "Related Actions") (together with this action, the "Actions").

- *Zeichner v. Nord Security, et al.*, 24-CV-2462 (N.D. Cal.) (pending);
- *Peterson v. Nordvpn S.A., et al.*, 24-CV-3218 (D. Colo.) (pending);
- *Sasgen v. Nordvpn, S.A., et al.*, 25-CV-6822 (N.D. Ill.) (pending);
- *Tio v. Nordvpn S.A., et al.*, 25-CV-13374 (D. Mass.) (pending);
- *Daddabbo v. Nordvpn, S.A., et al.*, 26-CV-558 (D. Conn.) (pending);
- *Hanscom v. NordSec Ltd., et al.*, 24-CV-277 (W.D.N.C.) (terminated);
- *Hanscom v. NordVPN S.A.*, 24CV057887-590 (N.C. Super. Ct.) (terminated); and
- *Schnappinger v. Nordvpn, S.A., et al.*, 26-CV-982 (E.D. Va.) (pending).

31. The parties litigated motions to dismiss in several of the Actions with varied results. In the federal *Hanscom* action, the court granted a motion to dismiss on November 19, 2024. The state *Hanscom* action was also dismissed, on January 13, 2026. In the California federal case, the court granted in part and denied in part Defendants' motion on December 2, 2024, leaving several live claims.

32. Motions to dismiss were also filed in *Tio* and in this Court. The *Tio* motion was denied administratively after the Parties notified the court about settlement negotiations and this Court stayed this action before resolving the motion.

33. Discovery first commenced in the federal California action in December 2024. The parties contested discovery vigorously but were able to eventually reach agreement on most of their disputes, presenting one ESI Protocol dispute to the California court for resolution. Defendants made over a dozen document productions, in 18 volumes, consisting of thousands of pages. These productions included detailed nationwide charging data, with nearly 3.2 million rows of data and over 67 million Class Member data points. The California Plaintiff made four document productions and produced an updated metadata overlay for one of those productions. Discovery began in *Peterson* in February 2025. In *Peterson*, Defendants made four document productions and the *Peterson* Plaintiff made three. Here, Plaintiff Kandeh made one production.

34. Aware of their duty to explore resolution while also moving the litigation forward, the parties set this case on a simultaneous mediation track in March 2025.

35. The parties engaged experienced class action mediator Marc E. Isserles, Esq. and held a full-day, in-person mediation in Manhattan on July 15, 2025.

36. In advance of mediation, Plaintiffs' user experience and user-centered design expert reviewed, analyzed, and prepared a preliminary analysis of Defendants' auto-renewal practices.

37. Plaintiffs also hired a database and data science expert to assist in the analysis of the nationwide Class Member charging data to inform their negotiations during mediation. Class Counsel and the data scientist then used this data to construct a comprehensive damages model. This model anchored negotiations at the July 15, 2025 mediation, as well as the subsequent September 2, 2025 mediation (held over Zoom) and full-day, in-person mediation held on April 14, 2026.

38. As a result of the parties' and the Mediator's efforts, on April 14, 2026, the parties reached a settlement in principle. The parties then spent the period from mid-April 2026 to October 2026 negotiating final terms. As with all prior negotiations, these discussions were adversarial, at arm's length, and included comprehensive written correspondence and discussions among counsel on April 22 and 29, May 20 and 22, June 24, 25, 26, and 29, July 1, 6–10, 13, and 14, September 17 and 28, and October 2 and 6, 2026.

39. Plaintiffs and Class Counsel are unaware of any similar pending individual lawsuits filed by Class Members.

## V. <u>Settlement Terms</u>

40. Under the Settlement Agreement, Nord has already deposited $18,000,000 into an escrow account ("Settlement Fund").

41. Under the Settlement Agreement, the Class is defined as all persons in the United States who at any time between April 26, 2020, and January 1, 2025 enrolled in an automatically renewing subscription to a Nord Service through the Nord Websites and paid at least one subscription renewal charge that was not later fully refunded. SA ¶ 9.[2]

42. There are approximately 1,139,000 Class Members.

43. After making routine deductions for the administration expenses, litigation expenses, the reserve fund, service awards, and attorneys' fees, cash payments will be distributed to Class Members on a pro rata basis in proportion to the non-refunded subscription payments they made. In other words, the more payments a Class Member made, the larger their settlement payment will be.

44. Assuming a 20% claims rate,[3] the average estimated payment is approximately $49.21.[4]

---

[2] For purposes of the class definition, renewing subscription charges appear in Nord's data as "subscription" charges, and initial enrollment charges are categorized as "authorization" charges. SA ¶ 9. Customers charged only "authorization" charges but not renewing "subscription" charges are not in the Class. *Id.* Persons who purchased a Nord Service via the Apple or Google Play stores are also excluded from the Class. *Id.* Also excluded from the Class are Nord; any parent, subsidiary, or affiliate of Nord; any entity in which Nord has or has had a controlling interest, or which Nord otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Nord. *Id.* Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff. *Id.*

[3] A 20% claims rate would far exceed the response courts routinely observe in consumer class actions. *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("A claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) ("8 percent response rate was well within the acceptable range for a consumer class action."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"). If fewer than 20% of Class Members submit valid claims, the average payment will increase, while if more submit, it will decrease.

[4] This figure factors in Plaintiffs' forthcoming request for reimbursement of litigation expenses, estimated at $110,000.00. At final approval, Plaintiffs will request reimbursement of their exact expenses and will update the average estimated payment as needed.

45. The settlement also provides for a minimum payment of $25.00 to Class Members whose allocation would otherwise be less than $25.00.

46. Here, the settlement is substantial: a cash fund of $18,000,000 and business practice changes valued at an additional $18,000,000. Even if the Court were to only consider the $18,000,000 in cash relief, this sum corresponds to 13.9% of the $129,863,936 of the total non-refunded renewal charges during the Class Period that Plaintiffs calculated from Nord's business records as maximum recovery for settlement purposes, a damages theory which Nord disputes.

47. Class Members will be eligible to receive their share of the settlement after completing a simple, easy-to-use claim form (attached hereto as **Exhibit 7**). The Claim Form process is designed to take only three minutes and Class Members are told as much from the get-go. Ex. 3 at 1. The parties are also working with the Settlement Administrator to further ease completion of the form by pre-populating the Class Member's Notice ID and email address into the Claim Form.

48. Class Members will be able to select from several payment methods, including a physical check, ACH transfer, prepaid Mastercard, PayPal, Zelle, or Venmo.

49. Class Members who have not opted out, filed a claim, objected, or affirmatively unsubscribed from Settlement Administrator emails will receive a reminder notice 45 days before the claims deadline.

50. Class Members who elect to receive checks will also receive a reminder notice if they have not cashed their check 45 days after receiving it.

51. In recognition of the key services rendered by the Named Plaintiffs on behalf of the approximately 1,139,000 Class Members, Plaintiffs will apply for service awards totaling no more

than $40,000, reflective of Plaintiffs' invaluable contributions to this action throughout the litigation.

52. Before joining this action, each named Plaintiff agreed to shoulder the responsibilities of being a sole representative plaintiff in their respective states, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement.

53. Throughout the litigation, Plaintiffs contributed significant time and effort to the case, meeting numerous times with Class Counsel, providing detailed background information, reviewing and discussing the pleadings and, where applicable, discovery, and providing their records for review and production in discovery. Plaintiffs made themselves available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims, and whatever else was needed to pursue a recovery for Class Members. Plaintiffs also supported Class Counsel in connection with the mediations.

54. At all times, Plaintiffs encouraged Class Counsel to obtain the best possible result for Class Members. In short, Plaintiffs' participation in this case was significant and critical.

55. Moreover, the award application was subject to arms-length negotiations, was facilitated by an experienced mediator, and will be disclosed to the Class. The Court need not rule on the award now, however, as per the Settlement Agreement Plaintiffs will move for final court approval of the service award with the Motion for Final Approval of the Settlement.

56. The Settlement Agreement authorizes Class Counsel to request that the Court approve attorneys' fees of one third of the settlement's $18,000,000 cash portion (*i.e.*, $6,000,000). *See* SA ¶ 104. When considering both the $18,000,000 each in cash and business practice changes, the requested fee represents 16.7% of the $36,000,000 total settlement value.

57. The settlement term governing Class Counsel's anticipated fee and expense request was also subject to arms-length negotiations, was facilitated by an experienced mediator, and will be disclosed to the Class.

58. Simply put, the requested attorneys' fee is reasonable and is in the typical range of class action fees approved in the Second Circuit.[5]

59. The parties agree that, as a result of the Actions, Nord revised its practices regarding auto-renewal and subscription cancellation to the benefit of Class Members and the general public. SA ¶ 49. Specifically, beginning in mid-2024 and completed by January 1, 2025, Nord updated its various auto-renewal related disclosures and practices. The parties valued these business practice changes at not less than $18,000,000. SA ¶ 49. "The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of injunctive relief through objective criteria: 'an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future.'" *Id.* at *15. This valuation is based on the four-year class period and settlement amount from the Settlement Agreement.

60. The parties agreed that the class period should end January 1, 2025. Class Counsel's damages calculation used in settlement negotiations reflected this assessment.

61. Following a competitive bidding process, the parties jointly selected Fidexis, LLC as the Settlement Administrator to disseminate notice and distribute settlement payments. As part of this bidding process the parties requested capped bids such that the risk of additional administration costs will be borne by the Settlement Administrator and not Class Members. Fidexis

[5] With their request for final approval, Class Counsel will also demonstrate using the lodestar cross-check methodology that their requested fee is reasonable and commensurate with the thousands of hours worked to achieve this excellent result.

agreed to cap costs at $390,637.00. Based on Class Counsel's experience, $390,637 is a reasonable administration cost for a case of this size and complexity.

## VI. <u>The Notice and Settlement Fund Distribution Plan</u>

62. Within 60 days of preliminary approval, the Settlement Administrator will disseminate notice by email to Class Members. SA ¶ 84.a. The email notice is attached as Exhibit D to the Settlement Agreement and hereto as **Exhibit 3**. The Notice is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices and informs Class Members about the settlement, including how they can exclude themselves or object and the consequences of inaction.

63. The Settlement Administrator will monitor the email notice program and optimize the delivery of email notice to maximize distribution, including using best practices to ensure notice delivery and taking steps to avoid spam filters. SA ¶ 84.d. Where Nord lacks a Class Member email address or where the Settlement Administrator determines the email notice was not delivered, direct mail notice will be given.

64. Before notice is issued, the Settlement Administrator will launch a settlement-specific website that will allow Class Members to easily: (1) find and view information about the settlement; (2) file (or download) a claim form; (3) view answers to frequently asked questions; (4) view important deadlines; and (5) find contact information for the Settlement Administrator and Class Counsel. *Id.* ¶ 85.b. The settlement website will be available in English, Spanish, and Chinese versions.

65. The Settlement Administrator will cause the settlement to be listed and promoted through two leading class action settlement websites, www.topclassactions.com and www.classaction.org. *Id.* ¶ 86.

66. The Settlement Administrator will establish a 24/7 call center to respond to Class Member inquiries. *Id.* ¶ 87. The Settlement Administrator will provide interpretive services for Spanish and Chinese language speakers. *Id.*

67. Class Members will have 90 days to submit a claim form. *Id.* ¶ 8.

68. Class Members will have 60 days to exclude themselves or object. *Id.* ¶ 32.

69. Plaintiffs respectfully request that the Court approve the parties' notice plan.

70. At least fourteen days before the Claims Deadline, Plaintiffs will move for final settlement approval. *Id.* ¶ 96.

71. The final approval hearing will be held as soon as is convenient for the Court but not less than 150 days after preliminary approval, to allow for the notice program's completion. SA Ex. E ¶ 13.

72. After the final approval hearing, if final approval is granted, the Court will issue a final order and judgment and dismiss this case with prejudice. *Id.* ¶ 15. The parties will work in good faith to obtain dismissal of the Related Actions with prejudice within 30 days of the Effective Date. SA ¶ 35.

## VII. Authenticating Exhibits

73. We also make this Declaration to authenticate the attached exhibits referenced in the accompanying Memorandum of Law.

74. Attached hereto as **Exhibit 1** is a true and correct copy of the fully executed Class Action Settlement Agreement in this matter.

75. Attached hereto as **Exhibit 2** is a true and correct copy of the proposed Order granting preliminary approval.

76. Attached hereto as **Exhibit 3** is a true and correct copy of the proposed Notice.

77. Attached hereto as **Exhibit 4** is a true and correct copy of the proposed long-form website notice.

78. Attached hereto as **Exhibit 5** is a true and correct copy of the Wittels McInturff Palikovic firm resume.

79. Attached hereto as **Exhibit 6** is a true and correct copy of the Bryson, Harris, Suciu, & DeMay, PLLC firm resume.

80. Attached hereto as **Exhibit 7** is a true and correct copy of the Claim Form.

WHEREFORE, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed settlement set forth in the Settlement Agreement attached hereto as Exhibit 1; (2) preliminarily certify the proposed Class for settlement purposes; (3) approve the proposed parties' notice plan and direct its execution; (4) appoint WMP and Bryson Harris as Class Counsel; (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: New York, New York
October 7, 2026

/s/ Ethan D. Roman
Ethan D. Roman

**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
edr@wittelslaw.com

Executed: Raleigh, North Carolina
October 7, 2026

/s/ Scott C. Harris
Scott C. Harris*

**BRYSON HARRIS SUCIU & DEMAY PLLC**
900 W. MORGAN STREET
RALEIGH, NORTH CAROLINA 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@brysonpllc.com

**Admitted pro hac vice*

*Co-Counsel for Plaintiffs and the Class*